Seth L. Goldstein, S.B.N. 176882
2100 Garden Rd., Ste. H-8
Monterey, CA 93940
Telephone:  (831) 372-9511
Fax:          (831) 372-9611
Lead Counsel for Plaintiffs

Mike Bomberger, S.B.N. 169866
Estey and Bomberger
2869 India Street
San Diego, CA 92103
Telephone:     (619) 295-0035

Merit Bennett
The Bennett Firm
460 St. Michaels Dr., #703
Santa Fe, NM 87505
Telephone:     (505) 983-9834

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIA LANGLEY; DAVID BENSON; MICHAEL TURELLI, PERSONAL REPRESENTATIVE OF M. B.; LAURA KINSER, AS AN INDIVIDUAL AND AS GAL FOR D. Z..; MELANIE STARK, AS AN INDIVIDUAL AND AS GAL FOR M.S.; CHERILYN CALER, AS AN INDIVIDUAL AND AS GAL FOR J.P., | Case No.: |
| **Plaintiffs,** | **COMPLAINT FOR DAMAGES** |
| **vs.** | |
| GUIDING HANDS SCHOOL, INC., HEREINAFTER "GHS"), JENNIFER GALAS, STARANNE MEYERS, CINDY KELLER, JENNIFER CHRISTENSEN, KIMBERLY WOHLWEND, BETTY MORGAN, JILL WATSON, LE'MON THOMAS, DAVID CHAMBERS,, STATE OF CALIFORNIA, DEPARTMENT OF EDUCATION, YOLO COUNTY SELPA, DAVIS JOINT UNIFIED SCHOOLS, SACRAMENTO COUNTY SELPA, ELK GROVE UNIFIED SCHOOL DISTRICT; AMADOR  COUNTY SELPA, AMADOR COUNTY UNIFIED SCHOOL DISTRICT, | **JURY TRIAL DEMANDED** |
| AND DOES 1 – 100, | |
| **Defendants.** | |

**COMPLAINT PURSUANT TO TITLE 42 OF THE UNITED STATES CODE, SECTION 1983**

**JURISDICTION**

This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in El Dorado Hills, California, which is within this judicial district.  Title 28 United States Code Section 1391(b) confers venue upon this Court.


The Court has supplemental jurisdiction over the California state law claims, pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).


**GENERAL ALLEGATIONS REGARDING THE PARTIES AND THEIR DUTIES**


At all times herein mentioned, minor M.S. (hereinafter "STARK") and decedent M.B. (hereinafter "M.B.") were children with a disability as defined in 20 USC 1401(3).


At all times herein mentioned, Plaintiffs Stacia Langley and David Benson were the parents of decedent minor M.B., and plaintiff Charles Langley was the grandfather of decedent minor M.B., with whom decedent minor M.B. was residing at the time of the acts complained of herein.


At all times herein mentioned, Plaintiffs Stacia and Charles Langley (hereinafter "LANGLEY") and David Benson (hereinafter "BENSON") were the heirs of decedent minor M.B..


At all times herein mentioned, minor Plaintiff M.S. is represented by and through his next friend, Melanie Stark.


At all times herein mentioned, minor Plaintiff J.P. is represented by and through his next friend Cherilyn Turner Caler.


At all times herein mentioned, minor Plaintiff D.Z. is represented by and through his next friend Laura Kinser.


At all times herein mentioned, Defendants State of California Department of Education (hereinafter "CDE"), Davis Joint Unified School District (hereinafter "DJUSD:), Yolo County SELPA (hereinafter "YOLO",  Elk Grove Unified School District (hereinafter "EGUSD"), Elk Grove Unified SELPA (hereinafter "EGUSELPA"); Amador County USD (hereinafter "ACUSD:) Amador County Office of Education (hereinafter ACOE; Sacramento County Office of Education (hereinafter SCOE), Folsom Cordova Unified School District (hereinafter FCUSD); and Folsom Cordova SELPA (hereinafter FCSELPA) and DOES 1-100 were public entities within the State of California, required by state and federally to provide education to special education children.


Plaintiffs LANGLEY and BENSON have complied with the claims filing requirements of California Civil Code section 900 et seq. against defendants CDE, DJUSD, and YOLO.

Plaintiffs STARK and M.S. have complied with the claims filing requirements of California Civil Code section 900 et seq against defendants CDE, EGUSD, and EGUSELPA.

Plaintiffs Caler and J.P. have complied with the claims filing requirements of California Civil Code section 900 et seq against defendants CDE, Amador County USD, and Amador County SELPA.

Plaintiffs Kinser and D.Z. have complied with the claims filing requirements of California Civil Code section 900 et seq against defendants CDE, FCUSD, and FCSELPA

At all times herein mentioned, defendant Jennifer GALAS (hereinafter "GALAS") was the special needs program manager for DJUSD who was in charge of ensuring M.B.'s safety and educational needs on behalf of DJUSD, YOLO, and CDE.

At all times herein mentioned, Guiding Hands School, Inc. (hereinafter "GHS") was a non-public school, organized as a corporation under the laws of the State of California, which contracted with EGUSD, EGUSELPA, DJUSD, YOLO, and CDE to act as said public entities' agent in providing education to special education children.

At all times herein mentioned, defendant, Staranne Meyers, (hereinafter "MEYERS" was the principal and member of the board of GHS; Cindy Keller (hereinafter "KELLER") was the executive director of GHS; defendant Jennifer Christensen (hereinafter "CHRISTENSEN"), and DOES 1-20 were officers directors, and administrators of defendant GHS, all of whom were charged with the responsibility of overseeing the activities of GHS.

At all times herein mentioned defendants, Kimberly Wohlwend (hereinafter "WOHLWEND"), Betty Morgan (hereinafter "MORGAN"); Jill Watson (hereinafter "WATSON"); Le'Mon Thomas (hereinafter "THOMAS"), Linda Stearn (hereinafter "STEARN"), Michael Smith (hereinafter "SMITH"), Melanie Allen (hereinafter "ALLEN"), Zack Mallory (hereinafter "MALLORY") and DOES 1-100  were employed as teachers and aides at GHS.

At all times herein mentioned, defendant WATSON was an aide and Handle With Care (hereinafter "HWC") instructor at GHS.

At all times herein mentioned, defendant, David Chambers (hereinafter "CHAMBERS"), was the school nurse at GHS.

Unless otherwise indicated in this complaint, the term "GHS" refers to Guiding Hands School, Inc., its administrators, its board of directors, its agents and employees, including, but not limited to defendants MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, and DOES 1-100.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA, GHS, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, MEYERS, KELLER, CHRISTENSEN, STEARN, and defendants DOES 1-100,, and each of them, were education professionals who undertook the duty to provide for

the educational and safety needs of children with exceptional needs, including students who suffer from physical, emotional, and behavioral disabilities of the type suffered by minor decedent M.B..

At all times herein mentioned, defendant CDE had the authority and mandatory duty under California law to ensure that special needs/disabled students in California are placed in a safe environment while their educational needs are being met.

At all times herein mentioned, defendant CDE had a mandatory duty under 20 USC 1400 et seq to ensure that all local educational agencies reduce discrimination on the basis of disability, improve pupil safety at schools, and improve the connections between pupils and supportive adults and schools.

At all times herein mentioned, defendant CDE had a mandatory duty under 20 USC 1412 (a) (5) (A) to ensure that special needs students were educated in the least restrictive environment.

At all times herein mentioned, defendant CDE had a mandatory duty under 20 USC 1412 (a) (5) (B) (ii). to determine whether non-public schools meet standards that apply to State educational agencies and local educational agencies and that children so served have all the rights the children would have if served by such agencies.

At all times herein mentioned, defendant CDE had a mandatory duty under 20 USC 1412 (a) (11) as the state educational agency responsible for general supervision to ensure (i) that the requirements of this subchapter are met; (ii) that all educational programs for children with disabilities in California, including all such programs administered by any local agency (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and (II) meet the educational standards of the State educational agency.

At all times herein mentioned, defendant CDE had a mandatory duty under 20 USC 1414 (d) (1) (A) (IV) (aa-cc) to ensure that special needs students be provided an Individualized Education Plan (IEP), that would help the student to advance appropriately toward attaining the annual goals; to be involved in and make progress in the general education curriculum; to participate in extracurricular and other nonacademic activities; and to be educated and participate with other children with disabilities and non-disabled children in certain activities.

At all times herein mentioned, defendant CDE had a mandatory duty under 20 USC 1413 (d)(3) (A) and (B) to consider, in developing the student's IEP (i) the strengths of the child;

(ii) the concerns of the parents for enhancing the education of their child;

(iii) the results of the initial evaluation or most recent evaluation of the child;

(iv)   the academic, developmental, and functional needs of the child; and

the use of positive behavioral interventions and supports, and other strategies, to address behavior that impedes the child's learning.

At all times herein mentioned, defendant CDE had a mandatory duty, under 20 USC 1415, to afford rights of due process to disabled students.

At all times herein mentioned, defendant CDE had a mandatory duty, under 20 USC 1470, to ensure that: (1)   children with disabilities and their parents receive training and information designed to assist the children in meeting developmental and functional goals and challenging academic achievement goals, and in preparing to lead productive independent adult lives; and

(2)   children with disabilities and their parents receive training and information on their rights, responsibilities, and protections under this chapter, in order to develop the skills necessary to cooperatively and effectively participate in planning and decision making relating to early intervention, educational, and transitional services.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, HWC, CHAPMAN, and DOES 1-100 were bound by provisions of the California Education Code, including, that confirmed that special needs/disabled children, including M.B. and STARK, have the right to be free from the use of behavioral restraints of any form imposed as a means of coercion, discipline, convenience, or retaliation by staff;  that confirmed that a behavioral restraint may be used "only to control behavior that poses a clear and present danger of serious physical harm to the pupil or others that cannot be immediately prevented by a response that is less restrictive; and that prohibited use a physical restraint technique that obstructs a pupil's respiratory airway or impairs the pupil's breathing or respiratory capacity, including techniques in which a staff member places pressure on a pupil's back or places his or her body weight against the pupil's torso or back; placing a pupil in a facedown position with the pupil's hands held or restrained behind the pupil's back; using a behavioral restraint for longer than is necessary to contain the behavior that poses a clear and present danger of serious physical harm to the pupil or others.

On or before November 28, 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100 had a mandatory duty to conduct an investigation whenever a complaint was received that alleged facts that indicate that a child or group of children may be in immediate physical danger or that the health, safety or welfare of a child or group of children is threatened.

On or before November 28, 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS SCOE, FCUSD, FCSELPA, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100 had a mandatory duty to conduct an investigation whenever a complaint is received that alleges facts that indicate that an individual with a disability is not receiving the special education or related services specified in his or her individualized educational program (IEP).

On or before November 29, 2018, defendants CDE, EGUSD, EGUSELPA,YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, and DOES 1-100 had a mandatory duty to report suspected incidents of child abuse to Child Protective Services and/or law enforcement officials.

On or before November 28, 2018, defendant CDE had a mandatory duty, pursuant to 5 CCR § 4650 (a) (7) (c), to directly intervene without waiting for local education agency investigation where it received a complaint that alleged facts that indicate that a child or group of children may be in immediate physical danger or that the health, safety or welfare of a child or group of children is threatened.

On or before November 28, 2018, defendant CDE had a mandatory duty under 5 CCR $ 4650 (a) (7) (C) - (E) to directly intervene without waiting for local education agency investigation where It received a complaint that alleges facts that indicate that an individual with a disability is not receiving the special education or related services specified in his or her individualized educational program (IEP),  and where it receives a complaint that involves violation of federal law governing special education, 20 U.S.C. section 1400 et seq., or its implementing regulations.

On or before November 28, 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, SCOE, FCUSD, FCSELPA, GALAS had actual knowledge that prone restraints were being unlawfully used on special needs/disabled students at GHS for predictable behavior.

On or before November 28. 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, and FCSELPA had actual knowledge that prone restraints were being unlawfully used as substitutes for behavioral intervention plans on special needs/disabled students at defendant GHS.

On or before November 28, 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA had actual knowledge that prone restraints were being unlawfully used against special needs/disabled students at defendant GHS in lieu of planned, systematic behavioral interventions

On or before November 28, 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD and GALAS, SCOE, FCUSD, FCSELPA had actual knowledge that prone restraints were being used for longer than necessary on special needs/disabled students at defendant GHS.

On or before November 28, 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD and GALAS, SCOE, FCUSD, FCSELPA had actual knowledge that prone restraints were used with an amount of force not reasonable or necessary under the circumstances on special needs/disabled students at defendant GHS.

Despite having actual knowledge that special needs students were being injured at defendant GHS, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA failed to undertake any investigation of, or any action against defendants GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-10 to prevent abuse of disabled children at GHS until after STARK, ZUCCOLOTTO, and PERKINS were repeatedly injured and after they were notified of the death of M.B..

As a result of the failure to prevent abuse of disabled children at GHS by defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA abuse of prone restraints on disabled students at defendant GHS continued and escalated into injury to STARK and the death of M.B., as alleged in various causes of action herein.

On or before November 28, 2018, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, SCOE, FCUSD, FCSELPA discovered that defendants GHS, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100 required parents to sign consent for their disabled children to be placed in restraints without notifying the students or their parents of what those restraints were or the dangers involved with the use of those restraints, and without notifying the student or their parents of the right to due process proceedings with respect to the use of those restraints.

On or before September 10, 2018, defendants CDE, YOLO. DJUSD, GALAS, SCOE, FCUSD, FCSELPA, GHS, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100 failed to notify STARK's parents of their right to due process with respect to the use of restraints on their disabled child M.S..

On or before before November 28, 2018, defendants CDE, YOLO. DJUSD, GALAS, SCOE, FCUSD, FCSELPA GHS, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100 failed to notify plaintiffs LANGLEY and BENSON of their right to due process with respect to the use of restraints on their disabled child M.B..

As a result of the failure of said defendants to notify the parents of STARK, ZUCCOLOTTO, PERKINS of their right to due process with respect to the use of prone restraints on their disabled children M.S., D.Z. and PERKINS and plaintiff STARK's, ZUCCOLOTTO's and PERKINS' respective mothers reasonably believed that she had to consent to the use of physical restraints on STARK, ZUCCOLOTTO and PERKINS in order for STARK, ZUCCOLOTO and PERKINS to continue their education.

As a result of the failure of said defendants to notify plaintiffs LANGLEY and BENSON of their right to due process with respect to the use of prone restraints on their disabled child M.B., plaintiffs LANGLEY and BENSON reasonably believed that they had to consent to the use of physical restraints on M.B. in order for M.B. to continue his education.

At all times herein mentioned, under 20 USC 1418, CDE had a mandatory duty to monitor and enforce the aforementioned regulations.

At all times herein mentioned, defendant CDE, hired, contracted with and used the services of defendants EGUSD, EGUSELPA, YOLO, DJUSD, SCOE, FCUSD, FCSELPAGHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100 to fulfill the aforementioned mandatory duties under the US Code for educating special needs and disabled students, and defendant CDE had mandatory oversight under said US Code sections of defendants EGUSD, EGUSELPA, YOLO, DJUSD, and GHS in conducting each of said activities.

At all times herein mentioned, defendants GHS, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100 were acting as the agent of defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, SCOE, FCUSD, FCSELPA in conducting all of the actions and inactions as complained of herein.

At all times herein mentioned, defendant GHS was certified by defendant CDE to provide special education services to disabled students, including the minor plaintiffs STARK, ZUCCOLOTTO, PERKINS and M.B..

At all times herein mentioned, under the mandatory supervisorial duties of defendant CDE, defendants YOLO and DJUSD, had an additional mandatory duty under Calif. Education Code section 56366, to enter into a written agreement (master contract) to specify the general administrative and financial agreements in providing education and related services (including transportation) to special education students in accordance with the pupil's IEP.  This mandatory agreement is required to include procedures for record keeping and documentation and the maintenance of school records by the contracting Local Education Agency to ensure that the student receives appropriate high school graduation credits.

Plaintiffs LANGLEY and BENSON are informed and believe that neither defendant YOLO nor defendant DJUSD had a master contract with defendant GHS at the time M.B. was enrolled and/or continued being

enrolled in GHS, and that defendant CDE failed to conduct oversight to ensure that the mandatory agreement was in place.

Defendants CDE, YOLO, DJUSD, GHS, GALAS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 failed to inform M.B.'s parents on enrollment and/or continued enrollment that there was no Master Contract with either YOLO or DJUSD and GHS.

Plaintiffs LANGLEY and BENSON did not learn that there was no Master Contract between defendants CDE, YOLO, DJUSD and defendant GHS until after the death of M.B..

Had plaintiffs LANGLEY and BENSON been informed that GHS was not contracted with GHS, LANGLEY and BENSON would not have enrolled M.B. in GHS.

In or around early June 2018, under the mandatory supervision of defendant CDE, defendant YOLO, maintained a list of non-public schools for use by defendant DJUSD and defendant GALAS to which special needs/disabled students could be referred.

In or around early June, 2018, defendants CDE, YOLO and DJUSD, by through DJUSD employee, defendant GALAS, urged, recommended, and advised M.B.'s mother (plaintiff Stacia LANGLEY) to enroll M.B. in defendant GHS as a special education student.

At or around the time defendants CDE, YOLO, DJUSD, and and through DJUSD employee GALAS recommended to M.B.'s parents that they enroll M.B. at defendant GHS, defendant CDE, by and through defendant YOLO, informed defendant DJUSD by and through defendant GALAS that defendant GHS had been removed from the list of approved non-public schools to which special needs/disabled students should be referred.

At or around the time CDE, by and through defendant YOLO, told defendant DJUSD, by through through defendant GALAS, that defendant GHS was no longer on said approved list, defendant CDE by and through defendant YOLO, failed to disclose to defendant DJUSD the reasons why defendant GHS had been removed as a recommended non-public school provider of educational services for special needs/disabled children.

At or around the time defendant CDE, by and through YOLO, told defendant DJUSD, by and through defendant GALAS, that defendant GHS was no longer on said approved list, DJUSD by and through defendant GALAS failed to ascertain the reasons why defendant GHS had been removed as a recommended provider of educational services for special needs/disabled  children.

Neither CDE, by and through defendant YOLO, nor defendants DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100, disclosed to M.B.'s parents at any time prior to M.B.'s death that defendant GHS had been removed as a recommended non-pubic school provider of educational services for special needs children.

Neither CDE, by and through defendant FCUSD, FCSELPA, and DOES 1-100, disclosed to STARK's, ZUCCOLOTTO's or PERKINS' parents at any time prior to STARK's injuries that defendant GHS had been removed as a recommended non-pubic school provider of educational services for special needs children.

Had plaintiff STARK's mother, or plaintiffs LANGLEY and BENSON been informed that defendant GHS had been removed from the list of recommended non-public school providers of educational services for special needs children, they would not have enrolled STARK, ZUCCOLOTTO, PERKINS or  M.B. at defendant GHS.

In or around September 8, 2018, defendants EGUSD, EGUSELPA and DOES 1-100 urged, recommended, and advised STARK's mother to enroll STARK in defendant GHS as a special education student.

In or around September 8, 2018, defendants EGUSD, EGUSELPA, and DOES 1-100 knew, or should have known, that other school districts and SELPAs had removed GHS from the list of non-public schools to which special needs/disabled children should be referred.

In or around September 8, 2018, defendant EGUSD, EGUSELPA and DOES 1-100 failed to ascertain the reasons why defendant GHS had been removed as a recommended provider of educational services for special needs/disabled  children by other schools districts and SELPAs.

Neither CDE, by and through defendant EGUSD, EGUSELPA and DOES 1-100 disclosed to STARK's parents at any time prior to STARK's enrollment at defendant GHS that defendant GHS had been removed as a recommended non-pubic school provider of educational services for special needs children.

Had STARK's parents been informed that defendant GHS had been removed from the list of recommended non-public school providers of educational services for special needs children, they would not have enrolled STARK at defendant GHS.

Prior to urging, recommending, and advising M.B.'s mother, plaintiff Stacia LANGLEY, to enroll M.B. in defendant GHS, neither defendants CDE, DJUSD, or YOLO conducted an investigation into practices at the school that involved use of restraints on students.

Had plaintiffs LANGLEY and BENSON known that defendants CDE, DJUSD, and YOLO did not conduct an investigation into the practices at the school that involved use of restraints on students, they would not have enrolled M.B. at defendant GHS.

Prior to urging, recommending, and advising STARK's mother to enroll STARK in defendant GHS, neither defendants CDE, EGUSD, or EGUSELPA conducted an investigation into practices at the school that involved use of restraints on students.

Had plaintiff STARK's mother known that defendants CDE, EGUSD, and EGUSELPA did not conduct an investigation into the practices at the school that involved use of restraints on students, they would not have enrolled STARK at defendant GHS.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD and GALAS knew, or should have known, that there were previously sustained findings of unlawful use of prone restraints on an exceptional needs child at defendant GHS that had resulted in physical injury.

At all times mentioned herein, defendants CDE, YOLO, DJUSD, and GALAS, failed to disclose to plaintiffs LANGLEY and BENSON, at any time prior to M.B.'s death, that there were previously sustained findings of unlawful use of prone restraints on a special needs/disabled child at defendant GHS that had resulted in physical injury.

Had plaintiffs LANGLEY and BENSON been informed that there were previously sustained findings of unlawful use of prone restraints on a special needs/disabled child at defendant GHS that had resulted in physical injury, they would not have enrolled M.B. at defendant GHS.

At all times mentioned herein, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, and ACUSD, failed to disclose to plaintiff STARK's, ZUCCOLOTTO, and/or PERKINS parents, at any time prior to STARK's, ZUCCOLOTTO;s and PERKIN's injuries, that there were previously sustained findings of unlawful use of prone restraints on a special needs/disabled child at defendant GHS that had resulted in physical injury.

Had plaintiff STARK's, ZUCCOLOTTO's and/or PERKINS' mothers been informed that there were previously sustained findings of unlawful use of prone restraints on a special needs/disabled child at defendant GHS that had resulted in physical injury, they would not have enrolled STARK, ZUCCOLOTTO or PERKINS at defendant GHS.

Plaintiffs are informed and believe that CDE has failed and refused to conduct a mandatory investigation of defendant GHS' employees who were involved in the death of M.B., as alleged in the First Cause of Action here, and continues to credential WOHLWEND as a special education teacher, despite their knowledge of her direct involvement in the death of M.B..

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, FCUSD, FCSELPA, ACOE, ACUSD, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, SMITH, ALLEN,  MALLORY, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that the use of a prone restraint carries with it a very well-known risk of injury and death especially to children; and that other types of physical restraints cause serious injuries to children.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, FCUSD, FCSELPA, ACOE, ACUSD, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that documented injuries from use of prone restraints include: asphyxiation, choking, strangulation, cerebral and cerebellar oxygen deprivation (hypoxia and anoxia), broken bones, lacerations, abrasions, injury to joints and muscles, contusions or bruising, overheating, dehydration, exhaustion, blunt trauma to the head, broken neck, wrist and leg compression, dislocation of shoulder and other joints, hyperextension or hyperflexion of the arms, exacerbation of existing respiratory problems, decreased respiratory efficiency, decrease in circulation to extremities, deep vein thrombosis, pulmonary embolism, cardiac arrest, respiratory arrest, and death.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, FCUSD, FCSELPA, ACOE, ACUSDGHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that the risk of injury or death is increased where the person restrained has neurological, cardiac, respiratory conditions, or is obese.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, FCUSD, FCSELPA, ACOE, ACUSD, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that a disproportionate number of children are injured and/or have died from restraints because children struggle against physical restraints, particularly when the situation or method of restraint is extremely unpleasant or aversive.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that struggling against a restraint is a natural response and cannot be assumed to be oppositional.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSDYOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that severe injuries and death can occur when adults physically overpower a child or when a child struggles well beyond the point of physical exhaustion.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that in a crisis situation, a child cannot be expected to fully understand directions and to effectively communicate their personal needs.

At all times herein mentioned, defendant, HWC, Inc. (hereinafter "HWC"), was a corporation organized under the laws of the State of New York, and doing business in California, training California teachers, inter alia, to restrain special needs children in prone restraints.

At all times herein mentioned, defendant, Bruce Chapman (hereinafter "CHAPMAN"), was the agent and employee, owner, alter-ego, president and founder of HWC, who developed a restraint system and

teaching methods taught to school staff in California, for use on "behaviorally challenged" children in California schools, including GHS, which lead to the injuries and/or death of the minor plaintiffs as herein alleged.

At all times herein mentioned, defendants CHAPMAN and HWC were safety education professionals who undertook the duty to provide for the safety of students by training education professionals in a restraint system to be used on "behaviorally challenged" students within the state of California, and specifically for use on special needs/disabled children at GHS.

At all times herein mentioned, defendants CHAPMAN and HWC owed a duty of due care to "behaviorally challenged," disabled children on whom it intended its restraint system to be used.

At all times herein mentioned, defendant HWC, and defendant CHAPMAN, personally, made representations to schools and educational professionals within the state of California, including defendants CDE, EGUSD, EGUSELPA, YOLO, DJUSD, GALAS, FCUSD, FCSELPA, ACOE, ACUSDGHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100 that use of the HWC restraint system, including the use of prone restraint on children, was safe for use on children, and that their restraint system had the imprimatur of the medical profession by virtue of CHAPMAN's vast experience and recognition in the medical and personal safety fields.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 relied on said representations by defendants HWC and CHAPMAN in hiring defendants HWC and CHAPMAN to teach each and every other defendant, and in their actual use of the HWC restraint system, including the use of prone restraint on disabled children, including STARK and M.B..

At all times herein mentioned, defendants CHAPMAN and HWC represented to schools and educational professionals within the state of California, including defendants CDE, EGUSD, EGUSELPA, YOLO, FCUSD, FCSELPA, ACOE, ACUSD, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100, that use of defendant HWC's

restraint system on "behaviorally challenged" students eliminated injuries during takedown, as well as chest compression and the possibility of positional asphyxiation during a prone hold; and further represented that their restraint system allowed educational professionals to work in teams and to maintain a safe hold on children, including modifications for orthopedic and physical conditions; and that HWC would customize their deployment system to include a variety of tactical adjustments for an "unprecedented range" of ergonomic considerations.

At all times herein mentioned, defendants CHAPMAN and HWC represented to schools and educational professional within the state of California, including CDE, EGUSD, EGUSELPA, YOLO, FCUSD, FCSELPA, ACOE, ACUSD, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, that HWC's program went through 10 years of field study, development and overview under the supervision of some of the most accomplished and experienced medical minds at Pennsylvania Hospital before the program was offered to the public and that defendant HWC's restraint system has been extensively evaluated by leading forensic (forensic pathologists) experts, chief medical examiners, doctors, and nurses.

At all times herein mentioned, defendants CHAPMAN and HWC represented that use of their restraint system, including the use of prone restraint on children, complied with California law.

At all times herein mentioned, defendant CHAPMAN and HWC's training of school staff included instruction on "take-down" moves, and on imposing physical restraints on children, including prone restraints.

At all times herein mentioned, defendants CHAPMAN and HWC knew or should have known that schools and school staff would rely on the representations by CHAPMAN and HWC that use of their restraint system, including use of prone restraints, was safe.

At all times herein mentioned, defendants CHAPMAN and HWC knew or should have known that children may be physically and emotionally injured when someone forces the child from a standing position to the ground and into a prone restraint.

At all times herein mentioned, defendants CHAPMAN and HWC knew or should have known that there is an elevated risk of emotional injury, serious bodily injury, and death from use of a prone restraint.

At all times herein mentioned, defendants CHAPMAN and HWC knew or should have known that "behaviorally challenged" children can, and sometimes do, have physical limitations and/or medical conditions that would counter-indicate the use of physical restraints, including prone restraints.

At all times herein mentioned, defendants CHAPMAN and HWC knew or should have known that "behaviorally challenged" children can, and sometimes do, have medical or emotional conditions that would make it difficult for the child to communicate his/her physical needs or concerns.

At all times herein mentioned, defendant HWC knew or should have known that "behaviorally challenged" children in prone restraints often struggle against the hold, and that as a natural and foreseeable response, the person imposing the hold may exert pressure, in a variety of forms, on the thoracic cavity of the child, or on the child's neck, head, shoulders, ankles, or limbs.

At all times herein mentioned, defendants HWC and CHAPMAN knew, or should have known, that there have been reports of numerous abuses of defendant HWC's method by schools and educational professionals who have employed defendant HWC's restraints on "behaviorally challenged", disabled students.

At all times herein mentioned, defendants HWC and CHAPMAN were employed by defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSDYOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100 to teach administrators and educational professionals at GHS how to use prone restraints on behaviorally challenged, disabled  students, including STARK and M.B..

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, YOLO, FCUSD, FCSELPA, ACOE, ACUSD, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN,SMITH, ALLEN, MALLORY  and DOES 1-100 used the restraint system and training provided by defendants HWC and CHAPMAN on disabled children at defendant GHS, including STARK and M.B..

At all times here mentioned, defendants HWC, CHAPMAN, CDE, EGUSD, EGUSELPA, YOLO, FCUSD, FCSELPA, ACOE, ACUSD, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 knew or should have known that use of prone holds was very dangerous and has resulted in the deaths of numerous "behaviorally challenged students."

At all times herein mentioned, defendants HWC, CHAPMAN, CDE, EGUSD, EGUSELPA, SCOE, FCUSD, FCSELPA, ACOE, ACUSD, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 knew or should have known that behaviorally challenged students often have one or more physical problems that would counter-indicate the use of a prone restraint or other types of physical restraints on that student.

At all times herein mentioned, defendants HWC, CHAPMAN, CDE, EGUSD, EGUSELPA, SCOE, FCUSD, FCSELPA, ACOE, ACUSDYOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN and DOES 1-100 knew or should have known that the use of a prolonged prone restraint other other types of physical restraints on a student increases the risk of injury and/or death to a child.

At all times herein mentioned, defendants HWC, CHAPMAN, CDE, EGUSD, EGUSELPA, YOLO, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew or should have known that failure to continuously monitor the vital signs of a child being held in a prone restraint or other type of restraint increases the risk of injury and/or death to that child.

At all times herein mentioned, defendants HWC, CHAPMAN, CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew or should have known the signs that a child held in a prone restraint or other type of restraint is in physical distress.

At all times herein mentioned, defendants HWC, CHAPMAN, CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, HWC, CHAPMAN, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100 failed to warn or to act upon what they knew or should have known was likely to increase injury and/or death to a child being held in a prone restraint.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, DJUSD, GALAS, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, HWC, CHAPMAN, and DOES 1-100 knew, or should have known that prone restraints or other restraints may not be imposed for predictable or well-known behaviors that do not present a clear and present danger to self or others.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 had no policy in place to ensure that prone restraints were not imposed on students at GHS for predictable or well-known behaviors that do not present a clear and present danger to self or others.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY HWC, CHAPMAN, and DOES 1-100 failed to ensure that prone restraints were not imposed on disabled students at defendant GHS, including M.B., for predictable or well-known behaviors that do not present a clear and present danger to self or others.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew or should have known that prone restraints or other restraints  may not be imposed or prolonged for actions that do not present a clear and present danger to self or others.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY,  HWC, CHAPMAN and DOES 1-100 had no policy or plan in place to ensure that prone restraints were not imposed or prolonged or other types of restraints at defendant GHS for actions that do not present a clear and present danger to self or others.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SNITH, ALLEN, MALLORY HWC, CHAPMAN, and DOES 1-100 failed to ensure that prone restraints were not imposed on disabled students at GHS, including M.B., or prolonged for actions that do not present a clear and present danger to self or others.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, knew or should have known that a prone restraint or other restraints may not be used as a substitute for a behavioral intervention plan.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, had no policy or plan in place to ensure that prone restraints were not used as a substitute for a behavioral intervention plan.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON,

THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, allowed, consented to, ratified, failed to present, used, and/or taught the use of prone restraints on disabled students at defendant GHS, including M.B., as a substitute for a behavioral intervention plan.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew or should have known that prone restraints and other restraints may not be used in lieu of planned, systematic behavioral interventions.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY HWC, CHAPMAN, and DOES 1-100, had no policy or plan in place to ensure that prone restraints or other restraints were not used as a substitute for a behavioral intervention plan.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 100 allowed, consented to, ratified, failed to prevent, used, and/or taught the use of prone restraints on disabled students at GHS, including M.B.,STARK, ZUCCOLOTTO and PERKINS in lieu of planned, systematic behavioral interventions.

At all times herein mentioned, defendants CDE, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, SMITH, ALLEN, MALLORY and DOES 1-100 had a duty under the California Education Code to develop an Individualized Education Program (IEP) for M.B. to determine how to best support M.B., STARK, ZUCCOLOTTO and PERKINS as it pertained to his individual needs, in the least restrictive environment.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGN, WATSON,

THOMAS, CHAMBERS, SMITH, ALLEN, MALLORY, HWC, CHAMBERS, and DOES 1-100 knew, or should have known that disabled students at GHS, including STARK, ZUCCOLOTTO, PERKINS and M.B., were frequently and routinely "taken down" by multiple staff members and placed into prolonged prone holds, the average time of those holds exceeding one hour in duration.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOES 1-100 failed to execute behavioral interventions, strategies, and supports as set forth in the Behavioral Support Plan of disabled students, including STARK, ZUCCOLOTTO, PERKINS and M.B..

**FIRST CAUSE OF ACTION FOR WRONGFUL DEATH OF MINOR M.B. AGAINST DEFENDANTS CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, CHRISTENSEN,, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100.**

Plaintiff incorporate by references each and every afore-stated general allegation regarding the parties and their duties.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, and DOES 1-100 knew from their own records, that M.B. had a host of, physical and emotional diabilities, including: speech impediments; low overall muscle tone; low facial muscle tone; a tendency to drool; poor proprioception; poor postural control; difficulty with coordinated muscle activity; bilateral intention tremors; difficulty with skilled hand movements; an eye tick; a congenital defect in his neck, for which he underwent a fusion of the C1-C2 vertebrae with resulting placement of screws and rods or a plate in his neck; daily neck pain; Ehler-Danlos syndrome; autism; extreme sensitivity to loud noises; difficulty sleeping; obesity; a pericallosal brain tumor; and neurological deficits.

At all times herein mentioned, defendants, CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, HWC, CHAPMAN and DOES 1-100 knew or should have known that prone restraints should not be used on behaviorally challenged students who have physical and emotional disabilities such as those suffered by M.B..

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, and DOES 1-100 knew that M.B. was taking daily pain medication and Clonidine.

At all times herein mentioned, defendants, CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, HWC, CHAPMAN and DOES 1-100 knew or should have known that prone restraints should not be used on behaviorally challenged students who take medications such as those taken by M.B. because such medications increase the risk of injury and death.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, and DOES 1-100 knew that M.B. had a history of behavioral challenges that doctors had linked to his autism.

At all times herein mentioned, M.B. was a special needs/disabled student, who was found by defendants CDE, DJUSD, GALAS and YOLO to have special needs based on both his autism and his emotional disturbance.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 were aware that M.B. had previously been supported successfully in his individual disability and special needs, both educationally and behaviorally, including prevention of any acts of spitting, by being provided with one on one paraeducator support.

At all times herein mentioned, M.B.'s parent, plaintiff Stacia LANGLEY, repeatedly requested of defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN and WOHWEND that one on one paraeducator support for M.B. to be continued.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOLHWEND and DOES 1-100 repeatedly refused to provide M.B. with paraeducator support without regard to his individualized need, but only for the sake of said defendants' own convenience and financial concerns.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 were put on notice by M.B.'s mother that M.B. became anxious and overwhelmed, unable to perform well without one to one support, and that M.B. didn't know how to ask for help when he needed it.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND,and DOES 1-100 placed M.B. at GHS where they knew or should have known that M.B.'s needs would not be met.

At all times herein mentioned, even after they were informed that M.B. was having behavioral difficulty that was directed associated with his disability, and was being subjected to prone restraints at GHS, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 did nothing to alleviate the conditions they, in effect, created when they placed him in a school where they specifically knew his needs would not be met.

At all times herein mentioned, defendants, CDE, YOLO, DJUSD, GALAS, GHS, WOHLWEND, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100 failed to provide M.B. and/or M.B.'s  parents due process rights with an avenue to appeal the denial of paraeducator support for M.B..

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, WOHLWEND, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100, provided M.B. with a Behavioral Support Plan, including positive behavioral interventions, strategies, and supports, which were to be used as a proactive action plan to address M.B.s behaviors that might impede learning.

At all times herein mentioned, defendants, CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS and DOES 1-100 knew or should have known both from the medical records in their possession, and from statements provided by M.B.'s mother about what M.B.'s medical had relayed to her, that M.B.'s medical doctors opined that M.B.'s medical conditions were the root cause of his behavioral challenges.

On or about June 13, 2018, an IEP team meeting was held, which was attended by M.B.'s mother (plaintiff Stacia LANGLEY); defendant GHS, by and through defendants CHRISTENSON and WOHLWEND; and defendant DJUSD, by and through defendant GALAS, which in turn was acting on behalf of defendants YOLO and CDE.

During the IEP team meeting of June 13, 2018, M.B.'s mother, plaintiff Stacia LANGLEY, discussed M.B.'s medical conditions, including his recently diagnosed brain tumor, for which he was seeing a neurosurgeon at UCSF.

During the IEP team meeting of June 13, 2018, M.B.'s mother, plaintiff Stacia LANGLEY discussed that M.B. recently had become very erratic and violent without warning, and that the only thing that kept him calm was to have someone next to him.

During the IEP team meeting of June 13, 2018, defendants CDE, YOLO, DJUSD, GHS, CHRISTENSEN and DOES 1-100 specifically questioned M.B.'s mother as to whether M.B.'s brain tumor was causing his erratic behavior, to which M.B.'s mother indicated that she did not know.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 caused to be conducted and/or relied on a functional analysis assessment, which they knew, or should have known, did not take into consideration how the medical conditions suffered by M.B. were the root cause of M.B.'s behavioral challenges.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 knew that spitting was a predictable behavior in which M.B. frequently engaged while in the classroom, and which would otherwise be prevented if he had been given a paraeducator.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 knew or should have known that M.B. did best, and did not spit, when he was given a lot praise and positive interventions.

During the IEP team meeting of June 13, 2018, M.B.'s mother specifically requested of defendants CDE, YOLO, DJUSD, GHS, GALAS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 that M.B. be given a one on one paraeducator as he had been given in the past.

During the IEP team meeting of June 13, 2018, defendant CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 represented to M.B.'s mother than a one on one paraeducator was not necessary at GHS because GHS had an "intensive level of service" onsite and because of the philosophy and system of behavioral support implemented at their site that provides support in "other ways".

During the IEP team meeting of June 13, 2018, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 represented to M.B.'s mother than M.B. could be seated next to another child who needed additional assistance.

During the IEP team meeting of June 13, 2018, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND  and DOES 1-100 represented to M.B.'s mother that two paraeducators would be "in the class" and that it was likely that M.B. would be next to her or one of the paraeducators.

During the IEP team meeting of June 13, 2018, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 made representations to M.B.'s mother that lead M.B.'s mother to believe that defendant WOHLWEND and the two paraeducators that would work with M.B. on his behavioral issues by talking to him, by reviewing coping skills, and with visual supports.

During the IEP team meeting of June 13, 2018, M.B.'s mother explained to defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 that M.B.'s medical conditions rendered him incapable of asking for help, and that he had difficulty expressing his feelings.

During the IEP team meeting of June 13, 2018, M.B.'s mother told defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND  and DOES 1-100 that a lot of the strategies Guiding Hands suggested were used at other schools, but they did not work.

During the IEP team meeting of June 13, 2018, M.B.'s mother's repeated requests to CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 11- for a one on one paraeducator to alleviate M.B.'s behavioral problems, including spitting, were denied.

During the IEP team meeting of June 13, 2018, CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 offered M.B.'s mother a copy of defendant GHS' parent/teacher handbook in which they indicated that they had system of positive behavior intervention and support.  The handbook also indicated that GHS  would "customize" the system to support student outcomes and  "interact with students in a way that promotes social proficiency."  Although dangerous prone restraints were routinely imposed

on M.B. and other students at the school, the handbook states that "social competence is a skill that requires direct teaching."  Although the handbook discussed the use of a token system to promote good behavior, in the IEP it was discussed that such a system is not as useful when there are many autistic students.  The handbook assured parents that adult behavior when correcting a child would be "calm", "brief", and "respectful."

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 conducted and/or relied on a Functional Analysis Assessment knowing that it did not take into consideration of how the known medical conditions suffered by M.B. were the root cause of his behaviors, including spitting.

Within the first ten calendar days of M.B.'s enrollment at defendant GHS, defendant WOHLWEND, and other GHS staff, whose names are unknown to plaintiffs at the present time, placed M.B. in restraints three times, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, GALAS, MEYERS, KELLER, CHRISTENSEN and DOES 110.

Defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 sent Behavioral Emergency Reports to defendants CDE, YOLO, DJUSD and GALAS for each of the three holds.  Despite knowing that M.B. was a disabled, physically compromised child who frequently was being physically restrained, defendants CDE, YOLO, DJUSD, and GALAS placed the Behavioral Emergency Reports in M.B.'s file without further inquiry or action.

Between on or about August, 2018 to October 5, 2018, CDE,YOLO, DJUSD, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 documented that M.B. spit 34 times, making M.B.'s behavior with spitting both known and predictable.

Plaintiffs LANGLEY and BENSON are informed and believe that on or about October 11, 2018, M.B. was placed in a prone restraint by defendant WOHLWEND, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100, as taught to defendant WOHLWEND by defendants HWC and CHAPMAN.

On or about October 12, 2018 defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 conducted an Interim/Annual IEP meeting, wherein supporting reports submitted at that meeting demonstrate that when M.B. worked one on one with staff he did very well, but when he was not being watched or provided with one on one support, M.B. became non-compliant, and engaged in negative "seeking" behaviors, even to the point of sometimes becoming physically aggressive.

On or about October 12, 2018, the said Interim/Annual IEP included a note which indicates that M.B. was in pain.

On or about October 12, 2018, defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 prepared a Behavioral Intervention Plan that acknowledged that M.B. needed to remain close to staff to control his spitting.

Contrary to what M.B.'s mother initially had been told in June at the IEP about M.B. being given "intensive" staff support, and without the knowledge or consent of M.B.'s parents, on or before October 12, 2018, defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, and DOES 1-100, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS, had isolated M.B., leaving him alone for long periods of time, facing the wall because of his behaviors.

By isolating M.B., defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 contributed to M.B.'s acting out by failing to give M.B. the high level of support that his special needs/disability required, as that need for a high level of support was previously documented by defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-20 .

On or about October 12, 2018, defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 prepared a Behavioral Intervention Plan (BIP) that indicated that M.B.

should ask for help from the staff when attempting to implement appropriate behaviors, even though said defendants knew that M.B.'s autism prevented M.B. from expressing himself.

On or about October 12, 2018, defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 100 prepared a Behavioral Intervention Plan (BIP) that set forth a strategy for responding to M.B. flinging spit, but nowhere in the BIP did said defendants indicate that any type of physical restraint, other than "hand holding", would be used on M.B. to control his spitting.

On or about October 12, 2018, defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 introduced a Behavior Emergency Plan (BER) for M.B. that states that "Emergency Interventions may only be used to prevent unpredictable, spontaneous behavior which presents a clear and present danger of serious physical harm…."

On or about October 12, 2018, GHS, defendant GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 had plaintiff Stacia LANGLEY sign a "consent" to use behavioral interventions on her son, without obtaining informed consent to use a prone restraint on M.B. by failing to inform plaintiffs LANGLEY and BENSON of the use of that type of a restraint, nor how long it may be used, and there is nothing that gave M.B.'s mother knowledge of the known dangers of the restraint, or that with her child's risk factors, use of a prone restraint would pose a a very serious risk of death to her child.

The aforementioned BER prepared on or about October 12, 2018, in referencing restraints taught to defendants CDE,YOLO, DJUSD, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100, by defendants HWC and CHAPMAN, called restraints  "therapeutic" physical intervention techniques, without providing a description of the techniques.

Defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND and DOES 1-100 were required to have M.B.'s parents sign the BER, BIP, and IEP, prepared on or about October 12, 2018, but the documents were not presented to either parent for signature when they were prepared.  The BER signature line for M.B.'s parent was left blank, and on the consent form portion of the IEP, on the form where it asked if the school facilitated parent involvement, the box is checked "no response".

Between the time of M.B.'s enrollment at GHS in June, 2018 and his death in November, 2018, M.B.'s behavior of spitting was known to defendants CDE,YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-20.

Between M.B.'s enrollment at GHS in June, 2018 and his death in November, 2018, M.B.'s behavior of spitting did not pose a clear and present danger of serious physical harm to M.B. or to others.

Between M.B.'s enrollment at GHS in June, 2018 and his death in November, 2018, M.B.'s behavior of spitting could have been controlled by a less restrictive response, including closer staff supervision, and one-to-one staff support.

On or before October 23, 2018, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 knew that M.B. had screws and a plate rod rods in his neck, had low muscle tone, could not express his feelings, and was "easily fatigued with use of gross motor skills", which includes the use of his arms.

On or about October 23, 2018, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS, M.B. was placed in a standing restraint by defendants GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 for pushing into defendant WOHLWEND after he stopped cleaning his yoga mat.

On or about October 31, 2018, defendants CDE, YOLO, DJUSD, GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, and DOES 1-100 gave M.B. a "D" in physical education for refusing to participate in yoga.

On or about October 31, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100, with the implied consent and ratification of defendants defendants CDE, YOLO, DJUSD, and GALAS, placed M.B. in a prone restraint on M.B., as taught to each of said defendants by defendants HWC and CHAPMAN, for spitting.  Said restraint lasted at least 20 minutes, and as a result of said prone restraint, M.B. was seen by the school nurse for injuries that are unknown to plaintiffs at the present time.

On or about November 2, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS, placed M.B. in a prone restraint, as taught to each of said defendants by defendants HWC and CHAPMAN, for spitting.  Said restraint lasted at least 20 minutes.

On or about November 8, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS, placed M.B. in a prone restraint, as taught to said defendants by defendants HWC and CHAPMAN, for spitting.  Plaintiffs are informed and believe that said restraint lasted for lasted for over an hour.

On November 15h, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS, imposed a prone restraint on M.B. for spitting, as taught to each of said defendants by defendants HWC and CHAPMAN.

Defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, and DOES 1-100 failed to conduct a debriefing following any restraints imposed on M.B., failed to determine whether the use of any restraints were proper and/or implemented in a manner consisted with staff training and legal requirements, and failed require the IEP teams to convene following any of the times M.B. was subjected to physical restraint to review the circumstances prompting the emergency interventions and to discuss indications for conducting a Functional Analysis Assessment or revising the Behavioral Intervention Plan,  as required by California law.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYER, CHRISTENSEN, WOHLWEND, and DOES 1-100 allowed the use of prone restraint without providing effective training to teachers and staff at GHS in coping with annoying behaviors without resorting to restraints.

Plaintiffs are informed and believe that defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 implied consented to, ratified the actions of the other defendants, and/or placed M.B. in other prone restraints, as taught to each of said defendants by defendants HWC and CHAPMAN, for spitting and/on other behaviors engaged in by behaviorally challenged/disabled students, the average duration of which was one hour.

Plaintiffs are informed and believe that defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 impliedly consented to, ratified the actions of the other defendants, and/or routinely imposed prone restraints, as taught to each of said defendants by defendants HWC and CHAPMAN, for periods in excess of one hour on behaviorally challenged and disabled students at GHS, including M.B..

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 knew or should have known that prone restraints were being used on behaviorally challenged/disabled students at defendant GHS, including M.B., "a lot" and "for pretty long periods of time."

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, CHRISTENSEN, KELLER, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100 failed and refused to prevent prolonged prone restraints from being used on disabled students at GHS, including M.B..

On or about November 28, 2018, at approximately 12:15 pm, M.B. allegedly spit at another student, which was one of his typical behaviors when he was not receiving adult support.

At said place and time, and in response to M.B.'s well-known, frequent, and documented behavior, defendants GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100 by and through defendants WOLHWEND and MORGAN, and with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS, performed a "takedown" maneuver, as taught by defendants HWC and CHAPMAN, on M.B., by holding M.B.'s hands behind his back, then dropping him to his knees, and rolling him over into a prone position.

At said time and place, and as a result of said "takedown maneuver", M.B. suffered a multitude of injuries, including abrasions to his chin, as well as bruising to his left cheek, right ankle, bilateral knees, and left leg.

As a result of the teaching of defendants HWC and CHAPMAN, it was foreseeable by each and every defendant, that executing a takedown maneuver on a disabled, physically vulnerable child, such as M.B., would result in a multitude of injuries.

At said place and time, defendants GHS, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100, by and through defendants WOHLWEND and MORGAN, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS, held M.B. in a face down restraint on the floor, with defendant WOHLWEND holding M.B.'s 's upper body, while defendant MORGAN held M.B.'s legs, as taught to defendants WOHLWEND and MORGAN by defendants HWC and CHAPMAN.

As a result of the teaching of defendants HWC and CHAPMAN, it was foreseeable by each and every defendant, that teachers and staff of "behaviorally challenged", disabled, physically vulnerable children, such as M.B., would be placed in a prone restraint by defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS and DOES 1-100, with the implied consent and ratification of defendants CDE, YOLO, DJUSD, and GALAS.

The actions of each and every individual staff member who participated in the prone restraint that occurred on or about November 28, 2018, was done with the implied consent and ratification of defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, CHRISTENSEN, and DOES 1-100.

At said place and after 10 minutes into the hold, M.B. calmed down, but defendants WOHLWEND and MORGAN continued the prone restraint, as taught to them by defendants HWC and CHAPMAN, because M.B. allegedly was pinching and yelling profanities.

At said place and time, and prior to defendant WATSON's lunch hour, defendant WATSON saw M.B. in the prone restraint, and neither said or did anything to assess the situation.

At said place and time, and at some point during the restraint, defendant MORGAN left the room to go to the bathroom and defendant THOMAS came into the room to hold M.B.'s legs.

At said time and place, defendant THOMAS neither said or did anything to assess the situation before joining in the prone restraint. .

While defendant THOMAS was holding M.B.'s legs, M.B. was speaking in a low, mumbled voice, rather than his normal high-pitched voice.

Plaintiffs LANGLEY and BENSON are informed and believe that at the time defendant THOMAS noticed M.B. mumbling, M.B. was already having difficulty breathing.

At said time and place, neither defendant WOHLWEND nor defendant THOMAS did anything to assess M.B.'s medical condition.

At said place and time, before defendant THOMAS left the room, M.B. showed "signs of safety", and "calmed down".

At said place and time, defendant MORGAN returned to the room, and resumed her hold on M.B.'s legs, relieving defendant THOMAS.

At said time and place, and despite the fact that M.B. had calmed down, defendant THOMAS took no steps to ensure that M.B. was released from the hold by defendants WOHLWEND and MORGAN.

At said time and place, and despite the fact that M.B. calmed down, defendants WOHLWEND and MORGAN continued the restraint for at least another half and hour.

At said place and time, defendant WATSON returned from lunch and saw that M.B. was still in restraint.

At said place and time, defendant WATSON told defendant MORGAN that she was not properly restraining M.B.'s legs, and to hold M.B. by the ankles.

At said place and time, and despite knowing the prolonged nature of the prone restraint, defendant WATSON did nothing to assess the situation or M.B.'s medical condition.

At said place and time, after over an hour and a half of being restrained, defendant WATSON joined in the restraint with defendants WOHLWEND and MORGAN by holding M.B.'s hands, while defendant MORGAN held M.B.'s ankles, and defendant WOHLWEND immobilized M.B.'s torso.

On November 28, 2018, at approximately 1:50 pm, M.B. began exhibiting additional signs of physical distress, including becoming volatile and kicking footprints into the wall.

Prior to November 28, 2018, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, and THOMAS and DOES 1-100, knew that M.B.'s physical disabilities made him quick to fatigue and lacking in endurance.

At said place and time, as M.B. was exhibiting additional signs of physical distress, defendants WOHLWEND, MORGAN, and WATSON, did nothing to assess the situation or M.B.'s medical condition.

At said place and time, M.B. exhibited even further signs of physical distress, including urinating on himself, after M.B.'s request to use the restroom was ignored.

At said place and time, while in almost two hour long restraint, defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, and DOES 1-100 did  not offer M.B. fluids, range of motion exercises, periodic release of his limbs for circulation, or even toilet breaks, in violation of California Education Code section 56521.2 (a)(3).

At said place and time, as M.B. was exhibiting said further signs of physical distress by needing to urinate, defendants WOHLWEND, MORGAN, and WATSON, did nothing to assess the situation or M.B.'s medical condition.

At said time and place, M.B. exhibited still further signs of physical distress, including biting his lip.

At said place and time, as M.B. was exhibiting said still further signs of physical distress by biting his lip, defendants WOHLWEND, MORGAN, and WATSON, did nothing to assess the situation or M.B.'s medical condition.

At said time and place, M.B. exhibited even still further signs of physical distress, by indicating that he was going to vomit, and then, in fact, vomited.

At said place and time, as M.B. was exhibiting said even still further signs of physical distress by becoming nauseated and vomiting, defendants WOHLWEND, MORGAN, and WATSON, did nothing to assess the situation or M.B.'s medical condition.

At said place and time, at approximately 1:50 pm, after exhibiting the afore-mentioned signs of physical distress, which were ignored by defendants WOHLWEND, MORGAN, and WATSON, M.B. was rendered unconscious.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 knew, or should have known that prompt medical attention should be given to a person in restraint who is showing signs of distress.

Plaintiffs are informed and believe, through medical reports, that at said place and time, M.B. aspirated and went into cardiac arrest.

At said place and time, defendant WATSON left the room to get someone to help her get M.B. into the school's van, because it was the end of the school day.

At said place and time, and prior to leaving the room, defendant WATSON did nothing to assess the situation or M.B.'s medical condition.

Plaintiffs are informed and believe that defendant WOHLWEND did not release the hold for several minutes after M.B. was rendered unconscious.

At said time and place, upon releasing the hold on the unconscious child, defendant WOHLWEND was unconcerned that M.B. was not moving.

At said time and place, and only after M.B. was rendered unconscious, defendant WOHLWEND caused staff at defendant GHS to call defendant CHAMBERS, the school nurse, because defendant WOHLWEND needed defendant CHAMBERS to document the blood on M.B.'s lip.

At that place and time, defendant CHAMBERS became "sidetracked", and did not respond to the call to document blood on M.B.'s lip.

At said place and time, and after defendant WOHLWEND caused staff at GHS to call defendant CHAMBERS, defendant WOLHWEND returned to M.B. and checked for a pulse because M.B. wasn't responding and "It was time to go home."

At that place and time, defendant WOHLWEND finally realized that a medical emergency existed.

At said place and time, after knowing that M.B. was rendered unconscious, neither defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON or DOES 1-100 called 911.

At said place, and on or around 1:55 pm, defendant WOHLWEND caused defendant CHAMBERS to be called again to examine M.B., this time because M.B. was unconscious.

At said place and time, defendant WOHLWEND was required by law, as a credential teacher within the state of California, to have training in CPR.

At no time during this incident did WOHLWEND attempt to perform CPR on M.B. after he lost consciousness.

At said place and time, and after M.B. was rendered unconscious, defendant CHAMBERS did not respond to the classroom for approximately ten minutes.

At  all times herein mentioned, defendants GHS, MEYERS, KELLER, CHRISTENSEN, CHAMBERS and DOES 1-100 should have known that a failure to respond promptly to a call for assistance from the school nurse regarding the welfare of a disabled child, such as M.B., may result in further injury or death to the child.

At said place and time, when defendant CHAMBERS arrived in the classroom, defendant CHAMBERS found that M.B. had no carotid or radial pulses.

At that place and time, defendant CHAMBERS conducted CPR on M.B. for 7-10 minutes.

At said place and time, and prior to conducting CPR on M.B., defendant CHAMBERS failed to clear M.B.'s airway of vomitus that M.B. had aspirated.

At all times herein mentioned, defendants CDE, DJUSD, YOLO, GHS, MEYERS, KELLERS, CHRISTENSEN,WOHLWEND, MORGAN, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 knew, or should have known that 911 should be used immediately to respond to medical emergencies.

Plaintiffs are Informed and believe that defendants CDE, DJUSD, YOLO, GHS, MEYERS, KELLERS, CHRISTENSEN, WOHLWEND, MORGAN, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 had no policy or plan in place to ensure that 911 was called immediately upon a child being rendered unconscious at GHS.

On November 28, 2018, at 2:03 pm, almost 25 minutes after M.B. was rendered unconscious, defendant CHAMBERS asked defendant GHS, by and through defendants MEYERS, KELLER, CHRISTENSEN and DOES 1-100, to call the paramedics.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, DOES 1-100 knew or should have known that use of a prone restraint on a physically compromised, disabled child, such as M.B., could result in serious injury or death.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 had no policy or plan in place to prevent the use of a prone restraint on a physically compromised child, disabled child at GHS, such as M.B..

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 allowed, consented to, ratified, failed to prevent, used and/or taught the use of a prone restraint on physically compromised children at GHS, such as M.B..

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 knew or should have known that use of emergency interventions with an amount of force not reasonable or necessary under the circumstances could result in serious injury or death.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 had no policy or plan in place to prevent the use of emergency interventions with an amount of force not reasonable or necessary under the circumstances could result in serious injury or death at GHS.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 allowed, consented to, ratified, failed to prevent, used, and/or taught emergency interventions with an amount of force not reasonable or necessary under the circumstances, which could, and in fact did, result in serious injury or death.

At all times herein mentioned, defendants CDE, DJUSD. GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that a prone restraint was contra-indicated for use on a disabled child with M.B.'s physical conditions.

At all times herein mentioned, defendants CDE, DJUSD. GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, HWC, CHAPMAN, and DOES 1-100 had no policy or plan in effect to prevent use of a prone restraint on a disabled child with M.B.'s physical conditions at GHS.

At all times herein mentioned, defendants CDE, DJUSD. GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 allowed, consented to, ratified, failed to prevent, used, and/or taught the use of a prone restraint was contra-indicated for use on a disabled child with M.B.'s physical conditions.

At all times here mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that a prone restraint may not be imposed for longer than necessary.

At all times here mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 had no policy or plan in place to prevent a prone restraint from being imposed on students at GHS, including M.B., for longer than necessary.

At all times here mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 allowed, consented to, ratified, failed to prevent, used, and/or taught the use of a prone restraint that was imposed on M.B. for longer than necessary.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 knew, or should have known, that a prone restraint should not be imposed for more than 15 minutes on a child.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100, had no policy or plan in place to ensure that a prone restraint was not be imposed on students at GHS, including M.B., for more than 15 minutes.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100 allowed, consented to, ratified, failed to prevent, used, and/or taught the use of a prone restraint should not be imposed for more than 15 minutes on a child.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 knew, or should have known that administration and/or law enforcement personnel must be called whenever a prolonged restraint is imposed on a child.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 had no policy or plan in place to ensure that administration and/or law enforcement personnel is called whenever a prolonged restraint is imposed on a child a GHS.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 failed to and/or failed to do anything to instruct staff at defendant GHS that administration and/or law enforcement personnel must be called whenever a prolonged prone restraint is imposed on a child, including the prolonged prone restraint imposed on M.B. or or about November 28, 2018.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBER, HWC, CHAPMAN and DOES 1-100 knew, or should have known the signs of physical distress in a child who is held in a prone restraint.

On or about November 28, 2018, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBER, HWC, CHAPMAN and DOES 1-100, failed to act on, failed to warn, or failed to give prior warning to each and every other defendant of the signs of physical distress in a child at defendant GHS, including M.B., who is held in a prone restraint.

On or before November 28, 2018, defendants HWC and CHAPMAN failed to advise each and every other defendant of the signs of physical distress in a child at defendant who is being held in a prone restraint.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 knew, or should have known, that use of a prone hold requires constant monitoring of the physical condition of the child in the hold.

On or about November 28, 2018, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 failed to have policies that required the monitoring of the physical condition of disable students, including M.B., who were behold in prone restraint,

On or before November 28, 2018, defendants HWC and CHAPMAN failed to advised each and every other defendant to monitor the physical condition of a disabled child at GHS, including M.B., when he was in the prone restraint.

On or about November 28, 2018, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 consented or ratified the failure to monitor and/or failed to monitor the physical condition of M.B., when he was being held in a prone restraint.

At all times herein mentioned, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 knew, or should have known that a hold should be released immediately when a child in a prone restraint shows signs of physical distress.

On or about November 28, 2018, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 had no plan or policy to require that a prone restraint be released immediately when a child being held in a prone restraint shows signs of physical distress.

On or before November 28, 2018, defendants HWC and CHAPMAN failed to advise each and every other defendant to release a prone restraint immediately when a child being held in a prone restraint at GHS, including M.B., shows signs of physical distress.

On or about November 28, 2018, defendants CDE, DJUSD, GALAS, YOLO, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-100 consented to, ratified, and did continue to hold M.B. in a prone restraint after he showed signs, and continued signs, of physical distress.

.On or about November 28, 2018, when the paramedics arrived at GHS, they found that M.B. was asystole (indicating a "flatline" cardiac arrest), that M.B. had no pulse, and that M.B. was not breathing.

On or about November 28, 2018, paramedics transported M.B. to a local hospital, but M.B. was transferred later that evening to UC Davis for a higher level of care.

On or about November 30, 2018, M.B. was pronounced dead from multiple organ system failure and profound irreversible neurologic injury {"brain death"} secondary to aspiration and prolonged cardiac arrest that M.B. suffered while being hold in a prolonged prone restrained at GHS.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 110 breached mandatory duties of care, as herein above alleged.

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS and DOES 1-100, breached their duty of due care to M.B. by, but not limited to:

● Failure to develop and maintain effective procedures governing emergency interventions;

● Failure to obtain proper training for use of behavioral emergency interventions

● Failure to provide oversight on the use of prone restraints

48

● Failure to develop protocols for use of restraints

● Failure to prohibit prone restraints on physically disabled children

● Failure to prohibit prolonged restraints (anything over 15 minutes)

● Failure to require that the child be release from a restraint at the earliest possible moment.

● Failure to prohibit the use of any restraint when contraindicated by the child's medical

or psychological condition, including obesity, neurological and muscular-skeletal compromise, and use of psychiatric medications, any and all of which are known to increase risk of death.

● Failure to prohibit restraints that constrict the child's ability to breathe.

● Failure to prohibit restraints when the child's airway is obstructed or the child is not breathing.

● Failure to prohibit use of multiple staff members in a restraint, which exponentially increases the risk of death.

● Failure to provide for the comfort of the child, including, but not limited to: offering a restrained child fluids, bathroom use, exercise, range of motion and periodic release of limbs.

● Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

● Failure to require staff to identify signs or complaints of distress that must be immediately addressed, including but not limited to: urination, vomiting, and agitation.

● Failure to require continuous, close supervision of a restraint by the Handle with Care trainer or another staff member who is not involved in the restraint.

● Failure to require immediate and accurate reporting on each restraint

●. Failure to conduct prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

● Failure to provide for:
-primary preventative measures rather than restraint;
-interventions that are less intrusive than restraints;
-effective ways to de-escalate situations to avoid restraints; and

-crisis intervention techniques that utilize alternatives to restraint.

● Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

● Failure to increase resources to ensure the provision of adequate alternative treatment options, including use of a one to one paraeducator to address child's specific needs

● Failure to teach students adaptive behaviors, especially involving autistic children to who not have effective ways of communicating and interacting with others.

● Allowing use of physical restraints on children which:

- create an aversive environment counterproductive to facilitating learning;

- cause significant physical harm, serious, foreseeable long term psychological impairment.

● Failure to provide oversight on the use of restraints to determine

- whether the intervention was necessary

- whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

● Allowing the use of deadly force on children without meaningful oversight and systemic reform.

● Allowed use of deadly force on children without requiring staff to know basic safety techniques, such as CPR

● Allowed use of deadly force on children without requiring staff to call 911 in the event of a medical emergency

As a direct and forceable result of the breach of said mandatory duties by defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100, school staff at defendant GHS, including defendants WOHLWEND, MORGAN, WATSON, THOMAS, and CHAMBERS imposed a prolonged prone restraint on M.B. and failed to render competent medical aid to M.B., resulting in the death of M.B..

At all times herein mentioned, defendants CHAPMAN and HWC breached its duty of care to "behaviorally challenged" students on whom its restraint system was to be used by, but not limited to:

failing to instruct GHS school staff on the known dangers of the use of a prone restraint on children; failing to instruct GHS school staff on the types of medical conditions in which use of a prone restraint is contraindicated; failure to instruct GHS school staff that prone restraints should not be used on children who are obese, who have neurological and muscular-skeletal compromise, or who use psychiatric medications; teaching GHS school staff to use a prone restraint that constricted the child's ability to breathe; failing to instruct GHS school staff on signs that would indicate when a child being held in restraint was in physical distress; failure to instruct GHS school staff to identify signs or complaints of distress that must be immediately addressed, including but not limited to: urination, vomiting, and agitation; failing to instruct GHS school staff that agitation by a child in a restraint is a natural response to being restrained, and is not necessarily a threat to authority; failing to protect children from foreseeable abuses of its restraint system; failing to instruct GHS school staff that prone restraints should not be used except as a last resort; failing to instruct school staff that restraints should not be used except to control dangerous, unpredictable behavior; failure to instruct GHS staff not to use prone restraints in excess of 15 minutes; failure to instruct GHS school staff that a child must be released from a restraint at the earliest possible moment; failed to instruct GHS school staff not to use multiple staff members during a prone restraint; failing to instruct GHS school staff that they must provide for the comfort of a child being held in a prone restraint, including offering a restrained child fluids, bathroom use, exercise, range of motion and periodic release of limbs; failure to instruct GHS school staff that vital signs of the restrained child must be monitored regularly throughout the restraint; failure to instruct GHS school staff that continuous, close supervision of a restraint must be

performed by the HWC trainer or another staff member who is not involved in the restraint; failure to instruct GHS school staff that an immediate and accurate report must be provided to all educational professionals after each restraint; failure to instruct GHS school staff that prompt and thorough review of any restraint imposed just be performed as a means to ensure compliance with laws and policies, to ensure continuing safety of students, and to prevent other incidents of restraint;  failure to instruct GHS school staff of primary preventative measures available rather than restraints; failure to instruct GHS school staff of interventions that are less intrusive than restraints; failure to instruct GHS school staff of effective ways to de-escalate situations to avoid restraints; failure to instruct GHS school staff of crisis intervention techniques that utilize alternatives to restraint; teaching use of prone restraints to GHS school staff that create an aversive environment counterproductive to facilitating learning; teaching use go prone restraints to GHS school staff that cause significant physical harm, serious, foreseeable long term psychological impairment; failure to provide oversight to GHS school staff on the use of restraints to determine whether the intervention was necessary; failure to provide oversight to GHS school staff on whether restraints were being implemented in a manner consistent with staff training; failing to teach GHS school staff basic life-saving safety techniques, such as CPR, which may become necessary as a result of the imposition of a restraint; failing to teach GHS school staff to call 911 in the event of a medical emergency involving someone involved in a prone restraint.

As a direct and foreseeable result of the negligence of CHAPMAN and HWC, school staff at GHS used prone restraints in a deadly and dangerous manner on physically and medically compromised "behaviorally challenged", disabled students, resulting in the death of M.B..

At all times herein mentioned, defendants CDE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN, GALAS, WOHLWEND, MORGAN, WATSON, THOMAS, and CHAMBERS, in doing the acts afore-alleged, breached the general duties of due care of educational professionals toward M.B., who was a disabled student under their guidance and care.

At all times herein mentioned, defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, HWC, CHAPMAN, and DOES 1-100 willfully, knowingly, intentionally, maliciously, and routinely used prone restraints on disabled children as a form of corporal punishment in violation of California law.

At all times herein mentioned, defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, HWC, CHAPMAN and DOES 1-100 willfully, knowingly, intentionally, maliciously, and routinely used prone restraints, known by said defendants to be dangerous, on disabled children with reckless in disregard of the safety of said students.

At all times herein mentioned, defendants GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, HWC, CHAPMAN, and DOES 1-100, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used prone restraints, to injure children and to create a reign of terror within the educational environment, in place and in stead of providing educational services for special needs children, for which they were hired.

As a direct and foreseeable result of the negligence of defendants CDE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN, GALAS, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, HWC, CHAPMAN and DOES 1-20, minor decedent M.B. died.

As a result of the afore-mentioned acts, plaintiffs have lost the care, comfort and society of M.B., in an amount according to proof at the time of trial.

As a result of the afore-mentioned acts, plaintiffs have incurred medical expenses, including ambulance, hospital, and doctors services to her son for the between the incident referenced herein and his death, approximately 24 hours later, in an amount to be ascertained at the time of trial.

By virtue of the willful and wanton, knowing, intentional, and malicious acts of GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, HWC, CHAPMAN, and DOES 1-100, and acts by said defendants that were done and acts done in reckless disregard for the safety and life of M.B., plaintiffs are entitled to punitive damages against said non-public entity defendants according to an award at the time of trial.

**SECOND CAUSE OF ACTION BY PLAINTIFFS STARK, ZUCCOLOTTO, and PERKINS FOR BATTERY AGAINST DEFENDANTS CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, HWC, CHAPMAN, and DOES 1-100**

Plaintiffs incorporate by reference each and every general allegation regarding the party and their duties.

Between STARK's, ZUCCOLOTTO's, and PERKINS' enrollment at defendant GHS and his dis-enrollment at the school in or around December, 2018, STARK's behaviors did not pose a clear and present danger of serious physical harm to themselves or to others.

Between STARK's, ZUCCOLOTTO's and PERKINS' enrollment at defendant GHS and his dis-enrollment at the school, STARK's, ZUCCOLOTTO's and PERKINS' behaviors could have been controlled by a less restrictive response.

On or about September 10, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, placed STARK in a HWC escort, and a small child restraint, as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about September 11, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a "physical prompt" and placed STARK in a small child restraint, as taught to each of said defendants by defendants HWC and CHAPMAN.

Or or about September 11, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, slammed STARK's head against the wall, injuring STARK.

Or or about September 11, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, failed to document the injuries to STARK, and failed to render medical aid to STARK for his injuries.

On or about September 12, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a "physical prompt" and placed STARK in a standing restraint, as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about September 17, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK two "physical prompts" as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about September 21, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a "physical prompts", placed him in one wrist hold, one standing restraint, and two physical containments as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about September 24, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a "hand over hand" intervention as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 2, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a "physical prompt", and placed him in two settled restraints, a wrist hold and a standing restraint as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 3, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a "physical prompt", and placed him in a small child restraint as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 4, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a "physical prompt" as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 9, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, held STARK's wrists, and placed him in a small child restraint and a prone restraint  as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 10, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK one physical prompt, two prone restraints, a small child restraint and a standing restraint as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 11, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, placed STARK in a prone restraint as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 15, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a physical prompt, and placed him in a small child restraint and in a prone restraint as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 16, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK two physical prompts as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 17, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK three physical prompts as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 18, 2018, defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, closed proximity to STARK, held his hands, and placed him in a standing restraint, a settled restraint and a small child restraint as taught to each of said defendants by defendants HWC and CHAPMAN.

The incident that occurred on or about October 18, 2018 was precipitated by defendants  GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, because STEARN felt that STARK did not ask to use the headphones in the proper way, when STARK's IEP and BIP stated that the headphones were needed by STARK to help him calm his sensitivity too sound.

On or about October 22, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a physical prompt, as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 23, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a physical prompt, and placed him in a settled restraint and a prone restraint, as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 24, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, moved in close proximity to STARK, placed him in a settled restraint, and a prone restraint, wrapped both arms and legs around STARK, then wrapped him up in a yoga mat and squeezed the ends of the mat, as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about October 29, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a physical prompt, and placed him in a standing restraint, as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about November 6, 2018, defendants GHS, MEYERS, CHRISTENSEN, KELLER, STEARN, and DOES 1-100, with the implied consent and ratification of defendants CDE, EGUSD, and EGUSELPA, gave STARK a physical prompt, held STARK's hands, and placed him in two standing restraints, two settled restraints, a prone restraint, a seated restraint, a sitting restraint, and a small child restraint as taught to each of said defendants by defendants HWC and CHAPMAN.

On or about November 30, 2018, two days after witnessing the afore-mentioned incident resulting in the death of minor decedent M.B., minor plaintiff PERKINS was placed in a prone restraint by defendant SMITH, ALLEN, GHS, MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, ACUSD and ACOE.

On or about January 11, 2017, minor plaintiff PERKINS was placed in a standing and a settled restraint by defendants MATLOCK, GHS, MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, ACUSD and ACOE.

On or about February 1, 2017, minor plaintiff PERKINS was placed in a standing and a settled restraint by defendants MATLOCK, ALLEN, GHS, MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, ACUSD and ACOE.

On or about February 8, 2017, minor plaintiff PERKINS was placed in a settled restraint by defendants SMITH, MATLOCK, GHS, MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, ACUSD and ACOE.

In or around 2018, defendants SMITH, MATLOCK, MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, ACUSD and ACOE, placed plaintiff PERKINS in a prone restraint, causing carpet burns that turned into a festering sore on PERKINS' face.

In or around this time frame, defendants SMITH, MATLOCK, MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, ACUSD and ACOE, battered PERKINS on other occasions, subject to discovery and proof at the time of trial.

On or about September 28, 2018, defendants MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, SCOE, EDUSD and EDSELPA, pushed ZUCCOLOTTO face down (with his hand on the back of ZUCCOLOTTO's head) into a desk and pulled both of ZUCCOLOTTO's arms behind him in an upper body hold fashion, causing severe injury to ZUCCOLOTTO's arms.

On or about April 25, 2018, defendants MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, SCOE, EDUSD and EDSELPA, placed ZUCCOLOTTO in another type of hold.

In or around this time frame, defendants MEYERS, CHRISTENSEN, KELLER and DOES 1-100, with the implied consent and ratification of defendants CDE, SCOE, EDUSD, and EDSELPA, battered ZUCCOLOTTO on other occasions, subject to discovery and proof at the time of trial.

Defendants, CDE, EGUSD, EGUSELPA, ACUSD, ACSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, STEARN, SMITH, MATLOCK, ALLEN, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, HWC, CHAPMAN, and DOES 1-100 and each of them, were the co-conspirators, aiders, abettors, agents, and employees of the other defendants, and acting as described herein were acting within the conspiracy and course and scope of their authority or employment as agents and/or employees thereof, and with the permission ad consent of the other defendants.

At all times herein mentioned, each defendant aided, abetted and/or conspired to batter "behaviorally challenged" children, including plaintiffs STARK, ZUCCOLOTTO and PERKINS.  In performing the acts described herein, Defendants acted with the intent to cause harmful and offensive contact with plaintiff STARK's, ZUCCOLOTTO's, and PERKINS' person within the course and scope of said conspiracy.

In doing the things herein alleged, and pursuant to the above conspiracy, aiding and abetting, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 intended to cause and did cause a harmful contact with STARK's, ZUCCOLOTTO's and PERKINS' person.

At all relevant times, plaintiff STARK, ZUCCOLOTTO and PERKINS found the contact by defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 to be harmful and offensive to her person and dignity. At no time did plaintiff STARK, ZUCCOLOTTO or PERKINS consent to any of the acts by the defendants as alleged herein.

A reasonable child in plaintiff STARK's, ZUCCOLOTTO's, and PERKINS' position would have been offended and/or harmed by the contact of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100.

As a direct and proximate result of the acts of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein above alleged, plaintiff STARK, ZUCCOLOTTO, and PERKINS was physically harmed, emotionally harmed, and experienced offensive contact with his person.

As a direct and proximate result of the conduct of defendants CDE, EGUSD, EGUSELPA, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 as herein alleged, plaintiffs STARK, ZUCCOLOTTO and PERKINS have suffered physical injury, severe emotional distress, mental anguish, humiliation, embarrassment, mental and emotional distress, and anxiety, all in an amount exceeding the jurisdictional minimum of the court, according to proof.

As a direct and proximate result of the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein alleged, plaintiffs STARK, ZUCCOLOTTO and PERKINS have suffered economic harm future economic harm and other consequential damages, all in an amount according to proof at trial.

These injuries have caused plaintiff  STARK, ZUCCOLOTTO and PERKINS to suffer general damages in an amount to be determined by proof at trial.

As a direct and proximate result of the conduct of defendants  CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, plaintiff STARK, ZUCCOLOTTO and PERKINS were required to obtain medical services and treatment in an amount to be determined by proof at trial.

As a further direct and proximate result of the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, Plaintiffs STARK, ZUCCOLOTTO and PERKINS will, in the future, be compelled to incur additional obligations for medical treatment in an amount to be determined by proof at trial.

The aforementioned conduct by defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY HWC, CHAPMAN, and DOES 1-100, were willful, wanton, and malicious, and were done

with the knowledge that autistic children are more likely to be physically and emotionally harmed by use of physical prompts and restraints.

At all relevant times, defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, acted with conscious disregard of the Plaintiff STARK's rights and feelings.  Defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN HWC, CHAPMAN, and DOES 1-100, also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to plaintiff STEARN.  Plaintiffs STARK, ZUCCOLOTTO and PERKINS are further informed and believes that defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY HWC, CHAPMAN, and DOES 1-100, intended to cause fear, physical injury and/or pain and suffering to plaintiffs STARK, ZUCCOLOTTO and PERKINS.  By virtue of the foregoing, the plaintiff STARK, ZUCCOLOTTO and PERKINS are entitled to recover punitive and exemplary damages from Defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, HWC, CHAPMAN, and DOES 1-100, according to proof at trial.

**THIRD CAUSE OF ACTION BY STARK, ZUCCOLOTTO AND PERKINS AGAINST DEFENDANTS EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, CDE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 FOR ASSAULT**

Plaintiffs incorporate by reference each and every general allegation regarding the parties and their duties, and of the Second Cause of Action for Battery

At all times herein mentioned, each defendant aided, abetted and/or conspired to assault "behaviorally challenged" children, including plaintiffs STARK, ZUCCOLOTTO, and PERKINS.  In performing the acts described herein, Defendants acted with the intent to cause apprehension of an immediate harmful and offensive contact with plaintiff STARK's, ZUCCOLOTTO's and PERKIN's person within the course and scope of said conspiracy.

In doing the things herein alleged, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY HWC, CHAPMAN, and DOES 1-100 intended to cause and did cause plaintiff STARK to suffer harmful or offensive contact.

As a result of said conduct of defendants CDE, EGUSD, EGUSELA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, plaintiff STARK, ZUCCOLOTTO and PERKINS reasonably believed that he was about to be touched in a harmful or an offensive manner, and in a manner that offended a reasonable sense of personal dignity;

That defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-20, threatened to touch plaintiff STARK, ZUCCOLOTTO, and PERKINS in a harmful or an offensive manner;

That it reasonably appeared to plaintiff STARK, ZUCCOLOTTO and PERKINS that defendants s CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, were about to carry out the threat.

That plaintiffs STARK, ZUCCOLOTTO and PERKINS did not consent to the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100,

That plaintiffs STARK, ZUCCOLOTTO and PERKINS were harmed, as herein alleged.

That the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, was a substantial factor in causing plaintiff STARK's, ZUCCOLOTTO's and PERKINS' harm.

The conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN MALLORY, HWC, CHAPMAN, and DOES 1-100, as described above, caused plaintiffs STARK, ZUCCOLOTTO, and PERKINS, as herein above alleged, to be apprehensive that defendants CDE, EGUSD, EGUSELPA, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, would subject him to further intentional invasions of their right to be free from harmful and offensive contact and demonstrated that at all times material herein, Defendants CDE, EGUSD, EGUSELPA, GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, had a present ability to subject them to an intentional offensive and harmful touching.

As a direct and proximate result of Defendants' unlawful conduct, plaintiffs STARK, ZUCCOLOTTO, and MALLORY suffered physical and emotional injury, and future physical and emotional injury, as previously alleged, all in an amount within the jurisdiction of the court according to proof at trial.

At all relevant times, Defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, HWC, CHAPMAN, and DOES 1-100, acted with conscious disregard of the Plaintiff STARK, ZUCCOLOTTO and PERKINSs rights and feelings.  Defendant also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to plaintiff STARK, ZUCCOLOTTO and PERKINS.  Plaintiff STARK, ZUCCOLOTTO and PERKINS further informed and believes that defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, intended to cause fear, physical injury and/or pain and suffering to plaintiff STARK, ZUCCOLOTTO and PERKINS.  By virtue of the foregoing, plaintiffs STARK, ZUCCOLOTTO and PERKINS are entitled to recover punitive and exemplary damages from defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, according to proof at trial.

The aforementioned conduct by Defendants was willful, wanton, and malicious.  At all relevant times, defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, acted with conscious disregard of the plaintiff STARK's, ZUCCOLOTTO's and PERKINS' rights and feelings.  Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to plaintiffs STARK, ZUCCOLOTTO and PERKINS.  Plaintiff STARK is further informed and believes that defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, intended to cause fear, physical injury and/or pain and suffering to the plaintiff.  By virtue of the foregoing, the plaintiff is entitled to recover punitive and exemplary damages from defendants GHS, KELLER, MEYERS, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, according to proof at trial.

**FOURTH CAUSE OF ACTION BY PLAINTIFFS STARK, ZUCCOLOTTO and PERKINS AGAINST DEFENDANTS CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMNITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiffs STARK, ZUCCOLOTTO and PERKINS incorporate by reference each and every general allegation and the allegations of the Second and Third Causes of action.

In doing the things herein alleged, the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community.

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SJITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-20 inflicted actual injury and/or acted with reckless disregard of the probability that plaintiffs STARK, ZUCCOLOTTO and PERKINS would suffer emotional distress, knowing that the child who was restrained, including plaintiffs STARK, ZUCCOLOTTO and PERKINS were present when the conduct occurred.

As a direct and proximate result of the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein alleged, plaintiffs STARK, ZUCCOLOTTO and PERKINS suffered severe emotional distress, severe mental anguish, humiliation, pain, and physical distress.

The conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein alleged, was the actual and  proximate cause, and a substantial factor in causing plaintiffs STARK's, ZUCCOLOTTO and PERKINS' severe emotional distress.

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knew or should have known that plaintiffs STARK, ZUCCOLOTTO and PERKINS did not want to be physically forced into prolonged prone restraints, standing, seated, settled and/or small child restraints.

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 knowing disregard for the safety of plaintiff STARK and defendant CDE, EGUSD, EGUSELPA, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 deliberate failure to monitor and control their behavior towards exceptional needs students, such as plaintiffs STARK, ZUCCOLOTTO and PERKINS caused plaintiffs STARK, ZUCCOLOTTO and PERKINS to be repeatedly battered and assaulted by teachers and aides at GHS.

Defendant CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100s' conduct was extreme and outrageous.  Defendants CDE, EGUSD, EGUSELPA, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, HWC, CHAPMAN, and DOES 1-20 acted willfully and wantonly, and with reckless disregard for plaintiffs' rights and feelings, and with deliberate indifference to the certainty that plaintiffs STARK, ZUCCOLOTTO and PERKINS would suffer emotional distress.

The outrageous conduct of the defendants GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-20described herein was performed with conscious disregard for the rights and feelings of the plaintiffs.  As a result, plaintiffs STARK, ZUCCOLOTTO and PERKINS are entitled to punitive or exemplary damages from defendants in a sum according to proof.

**FIFTH CAUSE OF ACTION BY PLAINTIFFS STARK, ZUCCOLOTTO, AND PERKINS AGAINST DEFENDANTS CDE, EGUSD, EGSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 FOR FALSE IMPRISONMENT**

Plaintiffs STARK, ZUCCOLOTTO and PERKINS repeat and incorporate by reference each and every general allegation regarding the parties and their duties and the allegations of the second, third and fourth causes of action, and incorporates the same herein by reference.

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein alleged, wrongfully restrained, confined, and detained plaintiffs STARK, ZUCCOLOTO and PERKINS by placing them in prolonged prone restraints, standing, seated, settled, and small child restraints for known and predictable behaviors.

By placing plaintiffs STARK, ZUCCOLOTTO and PERKINS in prolonged prone restraints, standing, seated, settled, and small child restraints, the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein alleged, intentionally deprived plaintiff STARK of his freedom of movement by the use of physical force, threats of force, and unreasonable duress.

The restraint of plaintiffs STARK, ZUCCOLOTTO and PERKINS by defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein alleged,, caused plaintiff STARK to stay in sitting, standing, small child, and prone restraints repeatedly, and for prolonged periods of time.

Plaintiffs STARK, ZUCCOLOTTO and PERKINS did not knowingly or voluntarily consent to said restraints.

;

68

As a proximate cause of the restraints, plaintiffs STARK, ZUCCOLOTTO and PERKINS suffered actual physical and emotional harm, as herein alleged.

That the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, was the actual and proximate cause and a substantial factor in causing harm to plaintiffs STARK, ZUCCOLOTTO and PERKINS.

The outrageous conduct of the defendants GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-20 described herein was willful and wanton, and was performed with conscious disregard for the rights and feelings of the plaintiffs.  As a result, plaintiffs STARK, ZUCCOLOTTO and PERKINS are entitled to punitive or exemplary damages from defendants GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY< HWC, CHAPMAN, and DOES 1-100 in a sum according to proof.

**SIXTH CAUSE OF ACTION BY PLAINTIFFS STARK, ZUCCOLOTTO, AND PERKINS AGAINST CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100 FOR NEGLIGENCE**

Plaintiffs STARK, ZUCCOLOTTO, and PERKINS incorporate by reference each and every general allegation regarding the parties and their duties, and every allegations of the Second, Third, Fourth, and Fifth Causes of Action

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-20 breached their duty towards plaintiff STARK by, but not limited to:

● Failure to develop and maintain effective procedures governing emergency interventions;

● Failure to obtain proper training for use of behavioral emergency interventions

● Failure to provide oversight on the use of restraints

● Failure to develop protocols for use of restraints

● Failure to prohibit restraints on physically disabled children

● Failure to prohibit prolonged restraints (anything over 15 minutes)

● Failure to require that the child be release from a restraint at the earliest possible moment.

● Failure to prohibit the use of any restraint when contraindicated by the child's medical or psychological condition, including neurological compromise, which are known to increase risk of death.

● Failure to prohibit restraints that constrict the child's ability to breathe.

● Failure to prohibit restraints when the child's airway is obstructed or the child is not breathing.

● Failure to prohibit use of multiple staff members in a restraint, which exponentially increases the risk of injury.

● Failure to provide for the comfort of the child, including, but not limited to: offering a restrained child fluids, bathroom use, exercise, range of motion and periodic release of limbs.

● Failure to require monitoring by staff of the vital signs of the child regularly throughout the restraint.

● Failure to require continuous, close supervision of a restraint by the Handle with Care trainer or another staff member who is not involved in the restraint.

● Failure to require immediate and accurate reporting on each restraint

●. Failure to conduct prompt and thorough review of any restraint imposed as a means to ensure compliance with laws and policies; to ensure continuing safety of students; and to prevent other incidents of restraint.

● Failure to provide for:
-primary preventative measures rather than restraint;
-interventions that are less intrusive than restraints;
-effective ways to de-escalate situations to avoid restraints; and

-crisis intervention techniques that utilize alternatives to restraint.

● Failure to provide staff with resources and tools to properly respond to the needs of those whom they serve and to be able to identify and address the triggers that may cause emotionally disturbed children to react in ineffectual ways to the environment.

● Failure to teach students adaptive behaviors, especially involving autistic children to who not have effective ways of communicating and interacting with others.

● Allowing use of physical restraints on children which:

- create an aversive environment counterproductive to facilitating learning;

- cause significant physical harm, serious, foreseeable long term psychological impairment.

● Failure to provide oversight on the use of restraints to determine

- whether the intervention was necessary

- whether each restraint was implemented in a manner consistent with staff training, as well as school and District (SELPA) policy.

- Allowing the use of deadly force on children without meaningful oversight and systemic reform.

- Allowed use of deadly force on children without requiring staff to know basic safety techniques

- Failed to document injuries caused by restraint and

- Failed to get medical attention for a child who was injured while in a restraint.

As a direct and forceable result of the breach of said mandatory duties by defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100, school staff  at defendant GHS, including defendant STEARN imposed numerous and prolonged prone restraint on plaintiff STARK, slammed STARK's head against a wall, and failed to render competent medical aid to STARK, resulting in injuries to plaintiff STARK.

As a direct and forceable result of the breach of said mandatory duties by defendants CDE, EDUSD, EDSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100, school staff  at defendant GHS, including defendant SMITH, ALLEN, and MALLORY imposed numerous and prolonged prone  and other restraints on plaintiff ZUCCOLOTTO, slammed ZUCCOLOTTO's head against a desk, pinned his arms, and failed to render competent medical aid to ZUCCOLOTTO, resulting in injuries to plaintiff ZUCCOLOTTO.

As a direct and forceable result of the breach of said mandatory duties by defendants CDE, ACUSD, ACOE, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100, school staff  at defendant GHS, including defendant aide, whose name is not known to plaintiff PERKINS at the present time, imposed numerous and prolonged prone and other restraints on plaintiff PERKINS, causing severe carpet burns to PERKINS' face and failed to render competent medical aid to STARK, resulting in injuries to plaintiff PERKINS.

At all times herein mentioned, defendants CHAPMAN and HWC breached its duty of care to "behaviorally challenged" students on whom its restraint system was to be used by, but not limited to:

failing to instruct GHS school staff on the known dangers of the use of restraints on children; failing to instruct GHS school staff on the types of medical conditions in which use of a prone restraint is contraindicated; failure to instruct GHS school staff that prone restraints should not be used on children who have neurological compromise; teaching GHS school staff to use restraints that constricted the child's ability to breathe; failing to instruct GHS school staff on signs that would indicate when a child being held in restraint was in physical distress; failure to instruct GHS school staff to identify signs or complaints of distress that must be immediately addressed; failing to instruct GHS school staff that agitation by a child in a restraint is a natural response to being restrained, and is not necessarily a threat to authority; failing to protect children from foreseeable abuses of its restraint system; failing to instruct GHS school staff that prone restraints should not be used except as a last resort; failing to instruct school staff that restraints should not be used except to control dangerous, unpredictable behavior; failure to instruct GHS staff not to use prone restraints in excess of 15 minutes; failure to instruct GHS school staff that a child must be released from a restraint at the earliest possible moment; failed to instruct GHS school staff not to use multiple staff members during a prone restraint; failing to instruct GHS school staff that they must provide for the comfort of a child being held in a prone restraint, including offering a restrained child fluids, bathroom use, exercise, range of motion and periodic release of limbs; failure to instruct GHS school staff that vital signs of the restrained child must be monitored regularly throughout the restraint; failure to instruct GHS school staff that continuous, close supervision of a restraint must be performed by the HWC trainer or another staff member who is not involved in the restraint; failure to instruct GHS school staff that an immediate and accurate report must be provided to all educational professionals after each restraint; failure to instruct GHS school staff that prompt and thorough review of any restraint imposed just be performed as a means to ensure compliance with laws and policies, to ensure continuing safety of students, and to prevent other incidents of restraint;  failure to instruct GHS school staff of primary preventative measures available rather than restraints; failure to instruct GHS school staff of interventions that are less intrusive than restraints;  failure to instruct GHS school staff of effective ways to de-escalate situations to avoid restraints; failure to instruct GHS school staff of crisis intervention techniques that utilize alternatives to restraint; teaching use of prone restraints to GHS school staff that create an aversive environment counterproductive to facilitating learning;  teaching use go prone restraints to GHS school staff that cause significant physical harm, serious, foreseeable long term psychological impairment; failure to provide oversight to GHS school staff on the use of restraints to determine whether the intervention was necessary; failure to provide oversight to GHS school staff on whether restraints were being implemented in a manner consistent with staff training; failing to teach GHS school staff basic first aid safety techniques, and to obtain medical care immediately for any child injured while in a restraint.

As a direct and foreseeable result of the negligence of CHAPMAN and HWC, school staff at GHS used restraints in a deadly and dangerous manner on physically compromised "behaviorally challenged", disabled students, resulting injuries to plaintiffs STARK, ZUCCOLOTTO and PERKINS.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, GALAS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, in doing the acts afore-alleged, breached the general duties of due care of educational professionals toward STARK, ZUCCOLOTTO and PERKINS, who were disabled students under their guidance and care.

At all times herein mentioned, defendants EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 willfully, knowingly, intentionally, maliciously, and routinely used prone restraints on disabled children as a form of corporal punishment in violation of California law.

At all times herein mentioned, defendants EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 willfully, knowingly, intentionally, maliciously, and routinely used prone and other restraints, known by said defendants to be dangerous, on disabled children with reckless in disregard of the safety of said children, including plaintiffs STARK, ZUCCOLOTTO, and PERKINS.

At all times herein mentioned, defendants GHS, MEYERS, KELLER, CHRISTENSEN, STEARN. SMITH, ALLEN, MALLORY, and DOES 1-100, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used prone restraints, to injure children and to create a reign of terror within the educational environment, in place and in stead of providing educational services for special needs children, for which they were hired.

As a direct and foreseeable result of the negligence of defendants CDE, GHS, MEYERS, KELLER, CHRISTENSEN, EGUSD, EGUSELPA, and DOES 1-100, minor plaintiffs STARK, ZUCCOLOTTO, and PERKINS suffered physical and emotional injuries.

By virtue of the willful and wanton, knowing, intentional, malicious acts of GHS, MEYERS, KELLER, STEARN, CHAPMAN and HWC and DOES 1-100, and acts by said defendants that were done and acts done in reckless disregard for the safety and life of STARK, ZUCCOLOTTO and PERKINS, plaintiffs STARK, ZUCCOLOTTO and PERKINS are entitled to punitive damages against said non-public entity defendants according to an award at the time of trial.

**SEVENTH CAUSE OF ACTION BY PLAINTIFFS STARK, M.S., D.Z., J.P., LANGLEY, BENSON, CALER AND KINSER AGAINST CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, STEARN, SMITH, ALLEN, MALLORY, CHAMBERS and DOES 1-100 FOR DISCRIMINATION (CALIFORNIA CIVIL CODE SECTION 220)**

Plaintiffs LANGLEY, BENSON, CALER, KINSER, STARK, D.Z. and J.P. incorporate herein by reference each and every general allegation regarding the parties and their duties and of the First through Sixth Causes of Action, inclusive.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN, and DOES 1-100 received or benefitted from, and defendants WOHLWEND, MORGAN, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN MALLORY,  and DOES 1-100 indirectly received or benefitted from, state financial assistance for providing education to special needs/disabled students in California.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON,

76

THOMAS, CHAMBER, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 were prohibited, by California Education Code section 220 from discriminating against students on the basis of their disability in any activity conducted by those educational institutions.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 discriminated against disabled special needs students by failing to give them academic instruction and support; failing to follow individualized education plans; using prone restraints as substitutes for behavioral intervention plans; and/or using prone restraints in lieu of planned, systematic behavioral interventions.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, willfully, knowingly, intentionally, maliciously, and routinely used prone and other restraints on disabled children as a form of corporal punishment in violation of California law.

At all times herein mentioned, defendants CDE, EGUSD, EGUSEPLA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 willfully, knowingly, intentionally, maliciously, and routinely used prone and other restraints, known by said defendants to be dangerous, on disabled children with reckless in disregard of the safety of said students.

At all times herein mentioned, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, and DOES 1-100, in doing each of the afore-mentioned acts, willfully, knowingly, intentionally, maliciously, and routinely used prone restraints, to injure children and to create a reign of terror within the educational environment, in place and in stead of providing educational services for special needs children, for which they were hired.

As a direct and proximate result of the acts of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, plaintiffs STARK, LANGLEY, BENSON, CALER, KINSER, M.S., D.Z. and J.P. suffered general and special damages according to proof at the time of trial.

By virtue of the willful, knowing, intentional, malicious and routine acts of GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100, which were done with a reckless disregard for the safety of STARK, M.S, D.Z., M.P., and minor decedent M.B., plaintiffs STARK, M.S., D.Z., J.P., LANGLEY, BENSON, CALER and KINSER are entitled to punitive damages against non-public entities according to an award at the time of trial.

**EIGHTH CAUSE OF ACTION BY PLAINTIFFS STARK, ZUCCOLOTTO, PERKINS, LANGLEY, AND BENSON AGAINST DEFENDANTS CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100, FOR INTERFERENCE WITH THE EXERCISE OF CIVIL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTIONS 51 (b) and  51.7**

Plaintiffs STARK, M.S., D.Z., J.P., LANGLEY, and BENSON incorporate by reference each and every general allegation regarding the parties and the allegations of the First through Seventh Causes of Action, inclusive.

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, committed multiple violent acts against plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B. because of their disability.

Defendants CDE, YOLO, DJUSD and GALAS aided, incited or conspired with defendants EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 in performing acts of violence against plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B. because of their disability.

A substantial motivating reason for the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, PERKINS and DOES 1-100 in committing said acts was their perception of plaintiff STARK's, ZUCCOLOTTO's, PERKINS' and minor decedent M.B.'s disability.

As a result of said acts of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, PERKINS, and DOES 1-100 plaintiffs STARK, ZUCCOLOTTO, and PERKINS suffered physical injury, and M.B. suffered physical injury and death.

The conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 was a substantial factor in causing plaintiffs STARK's, ZUCCOLOTTO'S and PERKIN's injuries and M.B.'s injuries and death.

By the acts alleged herein above, each defendant CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 subjected plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B. to violence, and/or threats of violence, against his person on account of their disability, and/or acted to aid, abet, and conspire with the other defendants to deny plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B. their right to be free from any violence or intimidation by threat of violence, committed against plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B.'s person on the account of their disability.

In doing the things herein alleged, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100 violated the civil rights of plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B., as set forth in California Civil Code section 51.7.

As a direct and proximate result of defendant CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, and DOES 1-100's unlawful conduct as allied herein, plaintiffs LANGLEY and BENSON has suffered the loss of care, comfort and society of minor decedent M.B., all in an amount exceeding the jurisdictional minimum of the court, according to proof.

As a direct and proximate result of defendant CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 unlawful conduct as alleged herein, plaintiffs STARK, ZUCCOLOTTO and PERKINS have suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress, and anxiety, all in an amount exceeding the jurisdictional minimum of the court, according to proof.

As a direct and proximate result of the unlawful conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 as alleged herein, plaintiffs STARK, ZUCCOLOTTO and PERKINS have suffered economic harm future economic harm and other consequential damages, all in an amount according to proof at trial

The aforementioned conduct by defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 was willful, wanton, and malicious, and defendants acted with conscious disregard of the Plaintiff's rights and feelings.  Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to the Plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B..  Plaintiffs are further informed and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to plaintiffs STARK, M.S., D.Z., J.P. and minor decedent M.B..  By virtue of the foregoing, plaintiffs STARK, M.S., D.Z., J.P., LANGLEY and BENSON are entitled to recover punitive and exemplary damages from the non-public entity defendants according to proof at trial.

In addition to and/or in lieu of plaintiff's election, plaintiffs STARK, LANGLEY, BENSON, M.S, D.Z. AND J.P. are entitled to receive statutory damages pursuant to Cal Civ Code 52(b), including actual and exemplary damages.

Pursuant to Cal Civ Code section 52(b)(3), plaintiffs STARK, LANGLEY, BENSON, M.S., D.Z. and J.P. have incurred, and will continue to incur, attorneys fees in the prosecution of this action and therefore deans such reasonable attorneys fees and costs as set by the Court.

**NINTH CAUSE OF ACTION BY PLAINTIFFS STARK, M.S., D.Z., J.P., LANGLEY AND BENSON AGAINST DEFENDANTS CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN and DOES 1-100 FOR INTERFERENCE WITH EXERCISE OF CIVIL RIGHTS IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1**

Plaintiffs STARK,  **, M.S., D.Z., J.P.,**  LANGLEY and BENSON incorporates by reference each and every general allegation regarding the parties and their duties, as well as of the First through Eighth Causes of Action herein.

Cal Cvi Code 52.1 provides that it is unlawful to interfere with the exercise or enjoyment of any rights under the Constitution and the laws of this state and the United States by attempted use of threats, intimidation or coercion.

20 USC 1400 et seq guarantees the rights of disabled person in California to fair access to public education in the least restrictive environment.

Cal Civil Code section 43 guarantees the right of every person to be free from bodily restraint or harm and personal insult.

In doing the things herein alleged, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 intentionally interfered with and attempted to interfere with the civil rights of plaintiff STARK and decedent minor M.B. by threats, intimidation, or coercion.

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100 made threats of violence against plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B., as herein above alleged, causing plaintiffs STARK, ZUCCOLOTTO, PERKINS, and minor decedent M.B. to reasonably believe that if they exercised their right to a fair access to public education in the least restrictive environment which took into account his special needs and disability, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 would commit violence against them by placing them in prolonged prone and other restraints and that defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 had the apparent ability to carry out the threats.

That defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 acted violently against plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B. to prevent them from exercising their rights and to retaliate against plaintiffs STARK, ZUCCOLOTTO, PERKINS, and minor decent M.B. for having exercised their rights, inclusive of their special needs and disability.

That as a result of the conduct of defendants CDE, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, GHS, MEYERS, KELLER, CHRISTENSEN, STEARN, SMITH, ALLEN, MALLORY, HWC, CHAPMAN, and DOES 1-100, as herein alleged, plaintiffs STARK, ZUCCOLOTTO and PERKINS  suffered physical and emotional harm.

That as a result of the conduct of defendants CDE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, HWC, CHAPMAN, and DOES 1-100, as herein alleged, plaintiffs LANGLEY and BENSON have  suffered the loss of care, comfort and society of M.B., in addition to suffering severe emotional distress over witnessing their son brain dead and dying from organ failure in the aftermath of his injuries.

That the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, as herein alleged, was a substantial factor in causing said harm to plaintiffs STARK**, M.S., D.Z., J.P.,**  and death to minor decedent M.B., resulting in the loss of care comfort and society of M.B. to plaintiffs LANGLEY and BENSON, as well as severe emotional distress over witnessing their son brain dead and dying from organ failure in the aftermath of his injuries.

At all times herein mentioned, the conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, as herein alleged, further interfered with the exercise of plaintiff STARK, ZUCCOLOTTO, PERKINS and M.B.'s civil rights to fair access to public education by actual use of, and threatened use of, behavioral restraints which were imposed on plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decent M.B. as a means of coercion, discipline, convenience, or retaliation by staff;  that were used to control behavior that did not pose a clear and present danger of serious physical harm to the pupil or others that could not be immediately prevented by a response that is less restrictive; using a physical restraint technique that obstructed minor decedent M.B.'s respiratory airway or impaired plaintiff STARK's, ZUCCOLOTTO and PERKINS and minor decedent M.B.'s  breathing or respiratory capacity, placing plaintiffs STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B. in a facedown position with the pupil's hands held or restrained behind the pupil's back; and by using a behavioral restraint for longer than was necessary to contain the behavior that allegedly posed a clear and present danger of serious physical harm to the pupil or others.

As alleged herein above, defendants intentionally interfered with or attempted to interfere with plaintiff STARK's, ZUCCOLOTTO's, PERKINS' and minor decedent M.B.'s clearly established rights guaranteed under the laws of the United States and the State of California, including, but not limited to plaintiff STARK's and minor decedent M.B.'s right of protection from battery, assault, false imprisonment, intimidation, and coercion.

Defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 conspired, aided, abetted, or incited each other to threaten, intimidate, coerce and punish plaintiffs STARK, ZUCCOLOTO, PERKINS and minor decedent M.B., who were exceptional needs/disabled students, by placing them in prolonged prone restraints from predictable and known behaviors, and without regard for the physical and emotional needs of such children.

As a direct and proximate result of the unlawful conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100, plaintiff STARK has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm; and plaintiff's LANGLEY and BENSON have suffered the loss of care, comfort and society of M.B., all in an amount within the jurisdiction of the court according to proof at trial.

At all relevant times, Defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN and DOES 1-100 acted with conscious disregard of the Plaintiff STARK's, ZUCCOLOTTO'S, PERKINS' and minor decedent M.B.'s rights and feelings.  Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to plaintiff STARK, **M.S., D.Z., J.P.,** and minor decedent M.B..  Plaintiffs STARK, LANGLEY and BENSON are further informed and believe that Defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN and DOES 1-20 intended to cause fear, physical injury and/or pain and suffering to the dependent minor M.B..  By virtue of the foregoing, the plaintiff is entitled to recover punitive and exemplary damages from the non-public entity defendants according to proof at trial

In addition to and/or in lieu of Plaintiffs; elections, plaintiffs STARK, **M.S., D.Z., J.P.,** LANGELY, and BENSON are entitled to receive and hereby seek statutory damages pursuant to Cal Civ Code section 52(b), including actual and exemplary damages.

Pursuant to Cal CiviL Code section 52(b), plaintiffs STARK, KINSER, LANGLEY and BENSON have incurred, and will continue to incur attorneys fees in the prosecution of this action ad therefore demands such reasonable attorneys fees and costs as set by the Court.

**TENTH CAUSE OF ACTION AGAINST CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 FOR CIVIL RIGHTS VIOLATION 42 USC 1983**

Plaintiffs STARK, **M.S., D.Z., J.P.,**, KINSER, LANGELY and BENSON incorporate herein by reference each and every general allegation regarding the parties and their duties and of the First through Ninth Causes of Action, inclusive.

At all times herein mentioned, defendant receives funds from the United States Department of Education, and is therefore subject to the requirements of Section 504 of the Rehabilitation Act of 1973 and its implementing regulations (hereinafter "Section 504").

At all times herein mentioned, defendants EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY, and DOES 1-100 receive funding from defendant CDE that was obtained by defendant CDE from the United States Department of Education.

At all times herein mentioned, Section 504 prohibits discrimination on the basis of disability in programs and activities operated by recipients of Federal financial assistance.

85

At all time herein mentioned, CDE violated the civil rights of plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B., special needs, disabled children in California, by failing and refusing to afford due process rights to the parents of such children; failing to perform the afore-mentioned mandatory duties towards such children; failing to investigate allegations of physical abuse against such children; failing to protect such children against infliction of prone restraints for known, predictable behaviors which did not pose a serious risk of harm to others; failure to ensure that such children are provided free access to public education which includes compliance with academic standards.

At all times herein mentioned, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON, THOMAS, CHAMBERS, STEARN and DOES 1-100 violated the civil rights of plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B., special needs, disabled children in California, by doing each of the things afore-mentioned, by specifically targeting STARK, ZUCCOLOTTO, PERKINS and M.B., as  disabled children, in imposing prone restraints, and without regard to the physical, emotional, and educational needs and requirements of STARK's ZUCCOLOTTO's, PERKINS' and M.B.'s disability.

As a direct and proximate result of the unlawful conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN and DOES 1-100, plaintiff MS., D.Z., AND J.P. have suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm; and plaintiff's LANGLEY and BENSON have suffered the loss of care, comfort and society of M.B., and severe emotional distress over seeing their son brain dead and die of multiple organ failure in the aftermath of his injuries, all in an amount within the jurisdiction of the court according to proof at trial.

At all relevant times, Defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 acted with conscious disregard of the Plaintiff STARK's, ZUCCOLOTO's, PERKINS' and minor decedent M.B.'s rights and feelings.  Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to plaintiff STARK, ZUCCOLOTTO, PERKINS, and minor decedent M.B..  Plaintiffs **M.S., D.Z., J.P.,**, KINSER,, LANGLEY and BENSON are further informed and believe that Defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 intended to cause fear, physical injury and/or pain and suffering to the plaintiff.  By virtue of the foregoing, the plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof at trial

In addition to and/or in lieu of Plaintiffs; elections, plaintiffs STARK **M.S., D.Z., J.P.,,** KINSER,LANGELY, and BENSON are entitled to receive and hereby seek statutory damages.

Plaintiffs STARK **M.S., D.Z., J.P.,,** KINSER,LANGLEY and BENSON have incurred, and will continue to incur attorneys fees in the prosecution of this action and therefore demands such reasonable attorneys fees and costs as set by the Court.

**ELEVENTH CAUSE OF ACTION BY PLAINTIFFS STARK, M.S., D.Z., J.P.,,** KINSER,**LANGLEY, AND BENSON AGAINST EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN, AND DOES 1-100 FOR DISCRIMINATION/CIVIL RIGHTS VIOLATION 42 USC 1983**

Plaintiffs STARK, **M.S., D.Z., J.P.,,** KINSER, LANGELY and BENSON incorporate by reference each and every general allegation regarding the parties and their duties, and the allegations of the First through TenthCauses of Action, inclusive.

At all times herein mentioned, defendants EGUSD, EGUSELPA, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100 in undertaking a contractual obligation to provide education for special needs students in California, was performing a function traditionally the exclusive prerogative of the state.

At all times herein mentioned, defendants GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100 with knowledge and consent of defendants EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO and DJUSD discriminated against disabled students at GHS by: using prone restraints on disabled students, including plaintiff STARK, ZUCCOLOTTO, PERKINS, and minor decedent M.B., without regard to the physical conditions and limitations of those disabled students; failing to complete behavioral emergency reports when emergency interventions were used on disabled students; supporting and/or maintaining a non-public school that was harmful to the health, welfare, and safety of disabled students with "exceptional needs", including plaintiff STARK. ZUCCOLOTTO, PERKINS and minor decedent M.B.: using prone restraints on disabled children, including plaintiff

STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B., in an inappropriate manner and for prolonged periods of time using prone restraints on disabled children as a form of corporal punishment; failing to follow behavior intervention plans on disabled children, including plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B.; failing to properly use behavior emergency reports on disabled students, including plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B.; failing to implement and comply with disabled student's, including plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B.'s, individualized education program: failing to comply with BIPs and prescribed intervention strategies contained therein for disabled students, including plaintiff STARK, ZUCCOLOTTO, PERKINS, and minor decedent M.B..

At all times herein mentioned, CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO and DJUSD knew, or should have known that the afore-mentioned abuses were occurring at GHS against disabled children, but EGUSD, EGUSELPA, YOLO and DJUSD failed and refused to investigate the abuses, or to take steps to prevent said abuses.

In doing the things herein alleged, defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GHS, MEYERS, KELLER, CHRISTENSEN and DOES 1-100 violated the civil rights of plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B..

As a proximate cause of the civil rights violations alleged herein, M.B. died during the infliction of a prolonged prone restraints and plaintiff **M.S., D.Z., J.P.,** suffered injuries during a restraint.

Plaintiffs LANGLEY and BENSON have suffered the loss of care, comfort and society of M.B., and severe emotional distress in witnesses their son brain dead and dying of multiple organ failure in the aftermath of his injuries in an amount according to proof at trial.

As a direct and proximate result of the unlawful conduct of defendants CDE, EGUSD, EGUSELPA, FCUSD, FCSELPA, ACOE, ACUSD, SCOE, YOLO, DJUSD, GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN and DOES 1-100, plaintiff STARK, ZUCCOLOTTO and PERKINS have suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional

distress and anxiety, and economic harm, all in an amount within the jurisdiction of the court according to proof at trial.

At all relevant times, Defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY,  and DOES 1-100 acted with conscious disregard of the Plaintiff STARK's, ZUCCOLOTTO's, PERKINS' and minor decedent M.B.'s rights and feelings.  Defendant also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to plaintiff STARK, ZUCCOLOTTO, PERKINS and minor decedent M.B.. Plaintiffs **M.S., D.Z., J.P.,**, KINSER, LANGLEY and BENSON are further informed and believe that Defendants GALAS, GHS, MEYERS, KELLER, CHRISTENSEN, WOHLWEND, MORGAN, WATSON THOMAS, CHAMBERS, STEARN, SMITH, ALLEN, MALLORY and DOES 1-100 intended to cause fear, physical injury and/or pain and suffering to the plaintiff. By virtue of the foregoing, the plaintiffs are entitled to recover punitive and exemplary damages from Defendants according to proof at trial.

In addition to and/or in lieu of Plaintiffs' elections, plaintiffs STARK **M.S., D.Z., J.P.,**, KINSER, LANGELY, and BENSON are entitled to receive and hereby seek statutory damages pursuant to Cal Civ Code section 52(b), including actual and exemplary damages.

Pursuant to Cal Civi Code section 52(b), plaintiffs STARK, **M.S., D.Z., J.P.,**, KINSER, LANGLEY and BENSON have incurred, and will continue to incur attorneys fees in the prosecution of this action ad therefore demands such reasonable attorneys fees and costs as set by the Court.

WHEREFORE, plaintiff prays judgment against defendant, as

follows:

FIRST CAUSE OF ACTION BY PLAINTIFFS LANGLEY AND BENSON FOR WRONGFUL DEATH:

1. Loss of care, comfort and society of M.B., according to proof.

2. Punitive damages against non-public entity defendants.

3. Costs of suit

4. Such other and further damages as the Court deems proper and just.

SECOND CAUSE OF ACTION BY PLAINTIFF STARK, ZUCCOLOTTO AND PERKINS FOR BATTERY

1. General damages in an amount to be determined by proof at trial;;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity in an amount to be determined by proof at trial

5. Punitive damages against non-public entity defendants;

6. Costs of this action;

7. Any other and further relief as the Court deems proper and just.

THIRD CAUSE OF ACTION BY PLAINTIFF STARK, ZUCCOLOTTO, AND PERKINS FOR ASSAULT

1. General damages in an amount to be determined by proof at trial;;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity in an amount to be determined by proof at trial;

5. Punitive damages against non-public entity defendants;

6. Costs of this action;

7. Any other and further relief as the Court deems proper and just.

FOURTH CAUSE OF ACTION BY PLAINTIFF STARK, ZUCCOLOTTO, AND PERKINS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. General damages in an amount to be determined by proof at trial;;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial];

3. Past and future lost earnings in an amount to be determined by proof at trial;

4. Impairment of earning capacity in an amount to be determined by proof at trial

5. Punitive damages against non-public entity defendants;

6. Costs of this action;

7. Any other and further relief as the Court deems proper and just.

FIFTH CAUSE OF ACTION BY PLAINTIFF STARK, ZUCCOLOTTO AND PERKINS FOR FALSE IMPRISONMENT

1. General damages in an amount to be determined by proof at trial;;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial];

4. Impairment of earning capacity in an amount to be determined by proof at trial]

5. Punitive damages against non-public entity defendants;

6. Costs of this action;

7. Any other and further relief as the Court deems proper and just.

SIXTH CAUSE OF ACTION BY PLAINTIFF STARK, ZUCCOLOTTO AND PERKINS FOR NEGLIGENCE

1. General damages in an amount to be determined by proof at trial;;

2. Medical and future medical and related expenses in an amount to be determined by proof at trial;

3. Past and future lost earnings in an amount to be determined by proof at trial];

4. Impairment of earning capacity in an amount to be determined by proof at trial]

5. Punitive damages against non-public entity defendants;

6. Costs of this action;

7. Any other and further relief as the Court deems proper and just.

SEVENTH CAUSE OF ACTION BY PLAINTIFFS STARK **M.S., D.Z., J.P.,**, KINSER, LANGLEY and BENSON FOR DISCRIMINATION (CALIFORNIA CIVIL CODE SECTION 220)

1. General damages for plaintiff STARK in an amount to be determined by proof at trial;

2. Medical and future medical and related expenses for plaintiff STARK in an amount to be determined by proof at trial;

3. Past and future lost earnings for plaintiff STARK in an amount to be determined by proof at trial;

4. Impairment of earning capacity for plaintiff STARK in an amount to be determined by proof at trial;

5.  Loss of care, comfort and society of M.B. for plaintiffs LANGELY and BENSON

6.  Severe emotional distress suffered by plaintiffs LANGLEY and BENSON

7.  Statutory damages;

8.  Attorneys' fees;

9. Punitive damages against non-public entity defendants;

10. Costs of this action;

11. Any other and further relief as the Court deems proper and just.

EIGHTH CAUSE OF ACTION FOR INTERFERENCE WITH CIVIL RIGHTS CALIFORNIA CIVIL CODE SECTION 51 (b) and 51.7

1. General damages for plaintiff STARK, ZUCCOLOTTO and PERKINS in an amount to be determined by proof at trial;

2. Medical and future medical and related expenses for plaintiff STARK, ZUCCOLOTTO and PERKINS in an amount to be determined by proof at trial;

3. Past and future lost earnings for plaintiff STARK, ZUCCOLOTTO and PERKINS in an amount to be determined by proof at trial;

4. Impairment of earning capacity for plaintiff STARK, ZUCCOLOTTO and PERKINS in an amount to be determined by proof at trial;

5. Loss of care, comfort and society of M.B. for plaintiffs LANGELY and BENSON;

6. Severe emotional distress suffered by plaintiffs LANGLEY and BENSON;

7. Statutory damages;

8. Attorneys' fees;

9. Punitive damages against non-public entity defendants;

10. Costs of this action;

11. Any other and further relief as the Court deems proper and just.

NINTH CAUSE OF ACTION FOR  INTERFERENCE WITH CIVIL RIGHTS CALIFORNIA CIVIL CODE SECTION 52.7

1. General damages for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

2. Medical and future medical and related expenses for plaintiff **M.S., D.Z., J.P.,,** KINSER, in an amount to be determined by proof at trial;

3. Past and future lost earnings for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

4. Impairment of earning capacity for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

5.  Loss of care, comfort and society of M.B. for plaintiffs LANGELY and BENSON;

6.  Severe emotional distress suffered by plaintiffs LANGLEY and BENSON

7.  Statutory damages;

8.  Attorneys' fees;

96

9. Punitive damages against non-public entity defendants;

10. Costs of this action;

11. Any other and further relief as the Court deems proper and just.

TENTH CAUSE OF ACTION FOR CIVIL RIGHTS VIOLATION 42 USC 1983

1. General damages for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

2. Medical and future medical and related expenses for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

3. Past and future lost earnings for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

4. Impairment of earning capacity for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

5.  Loss of care, comfort and society of M.B. for plaintiffs LANGELY and BENSON;

6.  Severe emotional distress as to plaintiffs LANGLEY and BENSON

7.  Statutory damages;

8.  Attorneys' fees;

9. Punitive damages against non-public entity defendants;

10. Costs of this action;

11. Any other and further relief as the Court deems proper and just.

ELEVENTH CAUSE OF ACTION FOR CIVIL RIGHTS VIOLATION 42 USC 1983

1. General damages for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

2. Medical and future medical and related expenses for **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

3. Past and future lost earnings for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

4. Impairment of earning capacity for plaintiff **M.S., D.Z., J.P.,** in an amount to be determined by proof at trial;

5.  Loss of care, comfort and society of M.B. for plaintiffs LANGELY and BENSON

6.  Severe emotional distress suffered by plaintiffs LANGLEY and BENSON

7.  Statutory damages;

8.  Attorneys' fees;

9. Punitive damages against non-public entity defendants;

10. Costs of this action;

111. Any other and further relief as the Court deems proper and just.

JURY TRIAL DEMAND:  Plaintiffs STARK, LANGLEY and BENSON demand trial of all issues by jury.

Date: November 7, 2019

Signed:                    */s/ Seth L. Goldstein*